608 A.2d 5

COMMONWEALTH of Pennsylvania, Appellant,

v.

Louis SLATON, Appellee.

Supreme Court of Pennsylvania.

Submitted March 5, 1991.

Filed May 1, 1992.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for appellant.

John L. Doherty, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Judge.

In the instant appeal, the Commonwealth presents a question of first impression in this Court relating to a prosecution under the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101, et seq., ("Controlled Substances Act" or "Act"). The issue presented is whether the failure of narcotics agents to disclose, at the time of a second search, the change in the focus of their investigation, rendered the consent to that search invalid.

As the parties concede, in reviewing a suppression court's ruling, an appellate court is bound by factual findings supported by the record. *Commonwealth v. James*, 506

Pa. 526, 486 A.2d 376 (1985); *Commonwealth v. Lark,* 505 Pa. 126, 477 A.2d 857 (1984); *Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983); *Commonwealth v. Jackson,* 497 Pa. 591, 442 A.2d 1098 (1982); *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Cruz,* 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Martin,* 481 Pa. 515, 393 A.2d 23 (1978); *Commonwealth v. O'Bryant,* 479 Pa. 534, 388 A.2d 1059, *cert. denied,* 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978); *Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Lewis,* 472 Pa. 235, 372 A.2d 399 (1977); *Commonwealth v. Wiggins,* 472 Pa. 95, 371 A.2d 207 (1977); *Commonwealth v. Johnson,* 467 Pa. 146, 354 A.2d 886, (1976); *Commonwealth v. Crosby,* 464 Pa. 337, 346 A.2d 768 (1975).

In the instant matter, the following factual scenario was found by the trial court. On November 21, 1983, Narcotics Agent, Eugene C. Beard, Jr., went to Lou's Pharmacy to conduct an investigation of a suspect by the name of Merriweather, whom the agent believed to be forging prescriptions. The agent identified himself, stated his purpose, requested the right to inspect the Schedule II records of the proprietor, Louis Slaton (hereinafter "Appellee"),[1] and obtained appellee's permission to do so. While conducting this initial investigation, the agent "found a lot of forged prescriptions," (Suppression Hearing Tr. p. 9), none of which related to Merriweather, the subject of that investigation. As a result of these initial findings the agent began contacting physicians to ascertain whether they had in fact issued and signed the prescriptions in question.

Prior to returning to Lou's Pharmacy on December 6, 1983, the agent was aware that the prescriptions previously removed from Lou's Pharmacy's Schedule II files were forgeries. (Suppression Hearing Tr. p. 40). The focus of the investigation had then shifted to Slaton. Yet, neither

1. Schedule II records are those pertaining to drugs classified as opiates or as amphetamines, and related substances. *See generally,* 35 P.S. § 780–104(2)(i)–(iv).

Agent Beard nor Agent Infantino, who conducted the inspections on December 6 and 7, 1983, indicated their suspicions or change of focus to appellee until January 16, 1985. On the latter date, the agents obtained a search warrant for Lou's Pharmacy, conducted a search, and arrested Slaton. Slaton was then given *Miranda* warnings and charged with 61 violations of the Act, 35 P.S. § 780–113(a)(4).[2]

The trial judge granted appellee's motion to suppress all evidence obtained as a result of the search conducted on December 6 and 7, 1983.[3] The trial judge found that after the first search on November 21, 1983, yielded evidence implicating Slaton and not Merriweather, the agents shifted the focus of their investigation to Slaton, and the agents were, therefore, required either to obtain a search warrant or to obtain Slaton's consent to their warrantless search. Since the agents chose neither to obtain a warrant nor to disclose to Slaton that he had become the subject of their inquiry, Slaton's consent to the search was invalid under the Fourth and Fourteenth Amendments to the United States Constitution.

On appeal, the Superior Court affirmed the trial court's ruling on the suppression motion. *Commonwealth v. Slaton*, 383 Pa.Super. 301, 556 A.2d 1343 (1989). The court first agreed with the trial judge's finding that Slaton had indeed become a focus of the investigation by the date of the second search. *Id.*, 383 Pa.Superior Ct. at 308–9, 556 A.2d at 1346. That court noted that the statutory scheme pursuant to which the agents acted closely adhered to the

**2.** § 780–113. Prohibited Acts ...
    (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
    (4) The removal or disposal of a detained or embargoed substance or article, whether or not such substance or article is in fact adulterated or misbranded.

**3.** In his motion appellee sought the suppression of all evidence. The trial judge, however, suppressed only that portion of the evidence resulting from the second search. Appellee's appeal of this order was denied by the Superior Court as interlocutory, and no appeal was taken from the Superior Court's decision. Thus that issue is not raised here.

constitutional bases for conducting a search, *i.e.*, with the consent of the owner/operator, with a warrant, or in circumstances where a warrant would not be required. *Id.*, 383 Pa.Superior Ct. at 307, 556 A.2d at 1346. In light of this statute, the Superior Court employed a constitutional analysis requiring knowing and voluntary consent. *Id.* Employing that analysis, the Superior Court concluded that Slaton had not given his knowing and voluntary consent to the search, because the agents had failed to inform him that he was the subject of the investigation and because they had not informed him that Merriweather was no longer the focus. *Id.*, 383 Pa.Superior Ct. at 310–12, 556 A.2d at 1347–48. Accordingly, the Superior Court, based on the statute, affirmed the trial court's conclusion that the appellee did not give knowing and voluntary consent to the search and affirmed the trial court's suppression of the evidence. *Id.*

The issue raised by the Commonwealth is the propriety of the lower courts' reading into the statute the requirement that the person whose premises are subject to the search must be given notice preceding such search that he or she is the focus of that search. In arguing that the agents, conducting the second search, properly relied on the notice given at the time of the first search, the Commonwealth relies solely upon compliance with the statutory language which provides,

> [Administrative] entries and inspections shall be carried out through officers ... designated by the [S]ecretary [of the Pennsylvania Department of Health]. Any such officer *upon stating his purpose* and presenting to the owner, operator, or officer in charge of such premises (i) appropriate credentials and (ii) a written notice of his inspection authority ... shall have the right to enter such premises and conduct such inspection at reasonable times.

35 P.S. § 780–124(b)(2) (emphasis added).

In view of the affirmative assurances at the time of the initial search that appellee was not the focus of that search, we are constrained to conclude that under these circumstances appellee was entitled to be advised of the change in focus.

The Commonwealth contends that the requirement that the agents disclose their "purpose" imposes upon the agent a duty merely to inform the owner or operator of the premises of the *type* of inspection he intends to conduct. This disclosure is necessary, the Commonwealth asserts, because different types of inspections require different levels of intrusion. Thus, a revelation of the purpose of an agent's visit serves only to inform the owner or operator of the extent to which he will be inconvenienced or the degree to which he will be involved.

Conversely, appellee contends that the Superior Court properly concluded that the Fourth Amendment protection against unreasonable searches and seizures applies to the search conducted. Appellee argues that in situations where, as here, no warrant was obtained and consent is offered as justification for conducting the search without a warrant, that consent must have been voluntary. Since appellee did not know that he had become the focus of the investigation, and in fact believed that Merriweather remained the focus, he argues that the requisite consent was not demonstrated and, therefore, the search was invalid. For the following reasons, we agree with appellee's contentions and affirm the Superior Court.

The primary flaw in the Commonwealth's position is their characterization of the agents' action as an administrative search. This characterization is an effort by the Commonwealth to diminish appellee's expectation of privacy in the premises searched. The United States Supreme Court has held that while the protections of the Fourth Amendment apply to administrative searches, a lesser degree of privacy attaches to commercial premises than to private property. *Donovan v. Dewey*, 452 U.S. 594, 598–99, 101 S.Ct. 2534, 2537–38, 69 L.Ed.2d 262 (1981). The Court fully defined those characteristics of an administrative search which validly circumvent the warrant requirement in the recent case of *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). In *Burger*, the Court held that in the context of a pervasively regulated business, and warrant-

less inspection of commercial premises will be reasonable if three criteria are met:

First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made....

Second, the warrantless inspection must be "necessary to further [the] regulatory scheme....

Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. To perform this first function, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes". In addition, in defining how a statute limits the discretion of the inspectors, we have observed that it must be "carefully limited in time, place, and scope."

482 U.S. at 702–03, 107 S.Ct. at 2644 (citations omitted).

The difficulty in characterizing the search in this case as administrative arises with the *Burger* Court's expanded discussion of what is a constitutionally adequate substitute for a warrant. In its explanation, the *Burger* Court noted that the New York statute "informs the operator of a vehicle dismantling business that inspections will be made on a regular basis. Thus, the vehicle dismantler knows that the inspections to which he is subject *do not constitute discretionary acts by a government official but are conducted pursuant to statute.*" 482 U.S. at 711, 107 S.Ct. at 2648 (emphasis added) (citation omitted). This description distinguishes the search in *Burger* from that conducted in the instant case. In *Burger*, plainclothes police officer, by

authority of New York Vehicle and Traffic Law § 415–a5,[4] entered the junkyard operated by appellant, Burger, to verify his license. Upon learning that Burger had neither the required license nor the "police book,"[5] the officers conducted a routine inspection of the junkyard and discovered that Burger was in possession of stolen vehicles and parts. The Court framed the issue as:

> whether an otherwise proper administrative inspection is unconstitutional because the ultimate purpose of the regulatory statute pursuant to which the search is done—the deterrence of criminal behavior—is the same as that of penal laws, with the result that the inspection *may disclose* violations not only of the regulatory statute but also of the penal statutes.

482 U.S. at 693, 107 S.Ct. at 2639 (emphasis added). Thus, the *Burger* Court was concerned with routine investigation conducted for the purpose of ascertaining compliance with the regulations, which also uncovers evidence suggesting criminal behavior.

In the case at bar, the narcotics agents' only purpose in searching Slaton's pharmacy was to investigate alleged activity. This was true even when the first search was conducted. The agents never claimed to have any administrative purpose but instead, declared at the outset that their desire was to gather additional information for an ongoing criminal investigation whose subject at that time was someone other than Slaton. The search, therefore, was not an administrative inspection conducted, as the *Burger* case requires, on a regular basis, but a discretionary act by officials who were involved in an ongoing criminal investigation. Since it was never claimed that the searches were administrative, the question of the parameters of an administrative search is not relevant here. The traditional Fourth Amendment warrant requirements for a valid search, therefore, apply in this case.

4. New York Vehicle Traffic Law § 415–a5 (McKinney, 1986).

5. A "police book" is the record of automobiles in the vehicle dismantler's possession.

The requirements of the Fourth Amendment regarding searches for evidence of a crime are guided by "one governing principle: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Michigan v. Tyler*, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978). This protection has been extended to commercial premises. The " 'basic purpose of this Amendment ... is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials' ... The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public." *Id.* at 504, 98 S.Ct. at 1947 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967)).

■ These fundamental principles underscore Slaton's entitlement, irrespective of his status as proprietor of the pharmacy, to the same constitutional protections afforded to any other individual whose premises are believed to house criminal evidence. Thus, officials who intend to conduct a search for evidence must either obtain a warrant or exempt themselves from the warrant requirement by asserting a warrant exception.

■ The exception asserted by the agents here is the consent exception. In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the United States Supreme Court found that voluntary consent to a search was sufficient to overcome the warrant requirement. Voluntariness, the Court explained, is a question of fact to be determined from all the circumstances. *Id.* at 249, 93 S.Ct. at 2059. Consent must be freely and intelligently given, however, and is not voluntary if it is obtained through deception, *United States v. Prudden*, 424 F.2d 1021 (5th Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970), as deception amounts to implied coercion, which negates the necessary element of willingness.

Appellee argues that his consent to the December search was based upon his reliance on the agents' prior indication that their search was directed at Merriweather. Thus, in essence, appellee has contended that the agents obtained his consent through deception by allowing him to rely on a previous assertion which was no longer correct.

The federal courts have explained the concept of deception in the context of consensual searches under the Fourth Amendment in various Internal Revenue Service ("IRS") cases. *See, e.g., United States v. Rothstein,* 530 F.2d 1275 (5th Cir.1976); *United States v. Dawson,* 486 F.2d 1326 (5th Cir.1973); *United States v. Bland,* 458 F.2d 1 (5th Cir.), *cert. denied,* 409 U.S. 843, 93 S.Ct. 43, 34 L.Ed.2d 83 (1972). In those cases, federal courts have considered whether an IRS agent's failure to disclose to a taxpayer that the agent's investigation may result in criminal charges constitutes a misrepresentation that negates consent given in a particular case. *United States v. Ponder,* 444 F.2d 816 (5th Cir.1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972); *United States v. Tonahill,* 430 F.2d 1042 (5th Cir.), *cert. denied,* 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed.2d 247 (1970); *United States v. Prudden, supra.* The U.S. Court of Appeals for the Fifth Circuit established the following standard:

> The mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit, and trickery. Therefore, the record here must disclose some affirmative misrepresentation to establish the existence of fraud....[6]

**6.** Although the court in *United States v. Prudden,* 424 F.2d 1021 (5th Cir.1970), placed the burden on the defendant to establish by clear and convincing evidence that a misrepresentation had occurred, we decline to adopt that shift of the burden of proof and, instead, leave the burden on the government to show that the consent obtained was knowing and voluntary. *See, e.g. United States ex rel. Cabey v. Mazurkiewicz,* 431 F.2d 839 (1970).

*Prudden,* 424 F.2d at 1033; *see also, United States v. Tweel,* 550 F.2d 297, 299 (5th Cir.1977) (quoting *Prudden).*

Application of this standard to this case yields the inevitable conclusion that the narcotics agents did obtain appellee's consent through deception. As previously stated, until the first search was completed, the agents' investigation was focused upon Merriweather, as the agents truthfully disclosed. As a result of this search, however, the focus of the agents' investigation changed, and the agents returned to Slaton's pharmacy with the belief that Slaton's conduct was improper. Notwithstanding this new focus, the agents obtained entry to the premises without any additional disclosure of purpose. One can only conclude that in consenting to the search, Slaton relied on the agents' earlier representations. By permitting him to continue this reliance, the agents obtained appellee's consent through deception. Such acts amount to implied coercion. Appellee's consent, therefore, was constitutionally invalid, and the search was illegal.

Because the search was constitutionally invalid, suppression of the evidence is the appropriate remedy. *Commonwealth v. Edmunds,* 526 Pa. 374, 395–96, 586 A.2d 887, 897 (1991).

The Order of the Superior Court is affirmed.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

LARSEN, J., concurs in the result.