662 A.2d 1084

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William L. CLARK.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Michael BARRETT.**

Superior Court of Pennsylvania.

Argued Feb. 2, 1995.

Filed June 22, 1995.

Reargument Denied Sept. 1, 1995.

Mary B. Seiverling, Deputy Atty. Gen., Harrisburg, for Com., appellant.

Stephen W. Furst, Bellefonte, for Clark, appellee.

Joseph L. Amendola, State College, for Barrett, appellee.

Before TAMILIA, HUDOCK and FORD ELLIOTT, JJ.

TAMILIA, Judge:

The Commonwealth appeals from the February 16, 1994 Order granting defendants' motions to suppress evidence seized at appellees' places of employment during a warrantless inspection of the premises and the subsequent execution of allegedly invalid warrants.[1]  The investigation and appellees' arrest were the result of "whistleblowers' " allegations of wrong-doing provided to Pennsylvania Department of Health officials and the Office of the Pennsylvania Attorney General. A detailed recitation of the circumstances preceding appellees' arrest, pivotal to the resolution of the issues before us, follows.

At the time of the alleged improper activity, appellee, William L. Clark, was President and Chief Executive Officer of and held an ownership interest in Central Pennsylvania Drug and Alcohol Services Corporation (CPDASC), t/d/b/a Talleyrand Retreat and Central Pennsylvania Individual and Family Counseling (CPIFC).  Talleyrand was an in-patient drug and alcohol service provider, established pursuant to the

1. Defendants' motions to suppress were consolidated for the purpose of the preliminary hearing and this Court has, sua sponte, by per curiam Order dated May 18, 1994, consolidated the cases for appeal.

terms of the Pennsylvania Drug and Alcohol Abuse Act, 71 P.S. §§ 1690.101 *et seq.*, and was regulated by the Office of the Drug and Alcohol Programs (ODAP), Pennsylvania Department of Health. CPIFC provided out-patient drug and alcohol counseling. Appellee, Michael Barrett, was an employee of the Centre County Drug and Alcohol Program (Centre County), which utilized services provided by Talleyrand.

In July, 1991, an investigation was begun by ODAP into an alleged conspiracy by appellees to defraud the county of more than $27,000 for services charged to Centre County by Talleyrand but not provided. The investigation was initiated after former CPDASC employees Sandy Taylor, Pam Johnson and Mary Natoli, and a member of Centre County's Drug and Alcohol Planning Council, Mary Watson, notified Ronald Young, a field representative of ODAP, of, *inter alia*, suspected improper billing activity at Talleyrand. The disgruntled employees also complained to the Pennsylvania Attorney General's Office and were interviewed on July 23, 1991 by Special Agent Dan Boden. On August 3, 1991, the employees informed Young, for the first time, of the substance of the billing irregularities and also advised him they had notified the State Attorney General's Office. Boden testified although the employees' allegations of wrong-doing were varied, only possible criminal activities such as billing irregularities, supported by documentation provided by Johnson and Taylor, were of interest to the Attorney General.

After being advised the employees had contacted the Attorney General's Office, Young contacted Boden, as a professional courtesy, and told him he was planning to conduct an unannounced inspection of Talleyrand the following week. Boden asked Young to delay his visit for a few days but made no request of Young to conduct his investigation in any manner other than the norm. On August 7, 1991, Young and another ODAP field representative made an unannounced visit to Talleyrand for the purpose of investigating complaints of noncompliance with confidentiality regulations, failure to follow personnel policies and fraudulent record keeping and billing practices. This inspection was conducted as authorized by 28

Pa.Code § 709.15, **Right to enter and inspect.** The Talley-rand client files inspected in furtherance of the investigation included one specifically identified by one of the employees, as well as 7 to 10 others selected at random. Young's notes of this visit were not turned over to the Attorney General. Also on August 7, 1991, Young met with employee Johnson and secured copies of accounting documents she had removed from Talleyrand. Once again, none of this information was provid-ed to the Attorney General. On August 20, 1991, a regularly scheduled visit of Talleyrand was conducted by ODAP field representative, William Foltz, who at Young's request re-viewed specific files to further his investigation into improper billing practices. On September 3, 1991, Young provided a copy of his finished report, with all clients' names removed, to the Attorney General. Two days later, on September 5, 1991, ODAP informed Talleyrand of two areas of non-compliance, disciplinary actions and confidentiality, but took no further action with regard to any alleged improprieties, i.e. improper billing. This concluded ODAP's administrative investigation of Talleyrand as prompted by the employees' complaints.

In October, 1991, Boden and the Criminal Investigation and Prosecution section of the Office of the Attorney General received a copy of Young's September 3rd report. Based in part upon the statements contained in Young's report, as well as the information provided by the employee confidential informants, Boden obtained and executed, on December 18, 1991, a search warrant at the Centre County Drug and Alcohol Program.

On September 1, 1992, CPDASC sold Talleyrand to HUB Centre Inc. Clark, however, retained ownership of the real estate with HUB as a tenant. As part of this transaction, CPDASC turned over all Talleyrand client files with the understanding they would be retained for six years following any patient's treatment, as required by law. In December, 1992, search warrants were obtained by the Attorney Gener-al's Office and executed upon records of CPDASC and Talley-rand, now operating under the auspices of HUB. The affida-vits of probable cause in support of the warrants were based

on the employees' information and, in part, on Young's September 3, 1991 report.

As a consequence of the information secured via the initial administrative inspections at Talleyrand and the execution of the search warrants subsequently obtained, appellees were arrested and charged with tampering with public records or information and criminal conspiracy. Additionally, appellee Clark was charged with theft by deception. In granting appellees' motion to suppress, the court reasoned unless Young's search was clearly administrative, appellees were entitled to a reasonable expectation of privacy, necessitating the implementation of a warrant. In further support of its decision, the court characterized Young and his co-workers as agents of the state, whose investigation centered on criminal conduct from its inception.

The Commonwealth argues both the administrative, warrantless search and those subsequent searches conducted with the benefit of warrants were constitutional. Appellant contends the Department of Health employees acted properly in their capacity as administrative supervisors and as authorized by 28 Pa.Code § 709.15, investigating alleged wrong-doing by a Pennsylvania licensed drug and alcohol treatment services provider. The affidavits of probable cause to secure the warrants contained a detailed explanation of the information provided by the whistleblowers, and used that information obtained during the Department of Health's investigation of Talleyrand only as supplemental support. Moreover, the Commonwealth argues, even if the purportedly tainted information provided by Young is excised from the affidavits of probable cause, sufficient probable cause still remained upon which to secure valid warrants.

In reviewing an Order granting a motion to suppress, we must first determine whether the suppression court's factual findings and legal conclusions are supported by the record. *Commonwealth v. Slaton,* 530 Pa. 207, 608 A.2d 5 (1992); *Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177 (1992), *alloc. denied,* 533 Pa. 598, 617 A.2d 1273 (1992).

To determine whether the findings of fact are supported by the record, an appellate court must review only the evidence of the appellee and so much of the evidence of the appellant which, when read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993). If the factual findings are supported by the record, then we may reverse only for an error of law. *Id.*

We find the warrantless inspections made by Health Department employee Young and his co-workers were legitimate, investigative visits, statutorily authorized by 28 Pa.Code § 709.15. Accordingly, appellees enjoyed no expectation of privacy and no warrant was necessary. The Health Department's purpose in conducting the unannounced visits, during August of 1991, was to investigate several employees' allegations of noncompliance with confidentiality regulations, the facility's failure to follow personnel policies, staffing problems, sexual harassment and fraudulent billing practices. Young's purpose in conducting the initial unscheduled visit was specifically articulated to the individual in charge of Talleyrand on that particular day.[2] Although admittedly the State Attorney General's Office was aware of ODAP's visits, it neither counseled Young as to how to proceed nor did it attempt to supervise or assume control of the Health Department's investigation. The records reviewed by Young during the initial inspection, with the exception of one specific client identified by a confidential informant/employee, were selected at random and, only by chance, happened to support the employees' allegations of overcharging. We particularly note with interest that after ODAP's follow-up investigation, corrective administrative action was taken with regard to only two areas of Talleyrand's noncompliance, neither of which related to the allegations of billing improprieties.

From our thorough review of the record, we find the warrantless search of the state regulated agency was statuto-

2. The record is unclear as to whether appellee Clark was physically present at the facility at the time of the inspection.

rily authorized, clearly administrative, and legitimately conducted. Moreover, we also find there was no indication Young and his co-workers were acting as agents of the Pennsylvania State Attorney General, but rather as supervisors conducting an independent, administrative investigation. Having so found, it is unnecessary to address the law as set forth in *Slaton, supra*, and relied upon by the suppression court herein. (Officers were required to advise pharmacy owner/defendant of a change in the focus of a criminal investigation from a customer to him, and to obtain either owner's informed consent or a warrant in order to search the premises.) *Id.*

■ Turning to the Attorney General's investigation, we find, based on the totality of the circumstances test adopted by this Commonwealth, sufficient probable cause existed for the issuance of warrants pertaining to the Talleyrand investigation. *See Commonwealth v. Murphy*, 427 Pa.Super. 578, 629 A.2d 1020 (1993), *appeal denied*, 537 Pa. 648, 644 A.2d 734 (1994). The informants independently provided the Attorney General's Office with allegations of wrong-doing supported, in part, by documentation. Young's findings served merely to confirm or corroborate the employees' charges. Moreover, for the sole purpose of argument, conceding the information provided by Young to be tainted, which we expressly do not so find, excising said information still leaves the Commonwealth with facts sufficient to support affidavits for probable cause for the issuance of the warrants. *See Commonwealth v. Ariondo*, 397 Pa.Super. 364, 580 A.2d 341 (1990). We find the sworn facts contained in the affidavits of probable cause provided reasonable bases upon which to issue the search warrants requested.

Having found the record fails to support the decision of the suppression court, and having found further the searches conducted both with and without warrants to have been valid, there is no need to address the Commonwealth's argument probing the appellees' standing to challenge the inspections and searches at the provider facility and/or government agency.

**532**

After careful consideration of all written and oral arguments presented, we find the suppression court's ruling granting appellees' motion was not supported by the record. Accordingly, we vacate the suppression Order of February 16, 1994 and remand this matter to the trial court for proceedings consistent with this Opinion.

*Order vacated; case remanded.*

*Jurisdiction relinquished.*