738 A.2d 427

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph M. CLECKLEY, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 8, 1998.

Decided Aug. 23, 1999.

518

John J. Petrush, Jr., San Francisco, CA, Peter Rosalsky (amicus), for Joseph M. Cleckley, Jr.

Theresa Ferris-Dukovich, Ahmed Aziz, Beaver, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

CAPPY, Justice.

Appellant contends that a consensual search should be deemed valid under Article I, Section 8 of Pennsylvania Constitution only where it can be shown that the person subject to the search knew that he or she had the right to refuse such consent. For the reasons that follow, we disagree and, accordingly, affirm the decision of the Superior Court.

On December 23, 1995, Officer John Deluca of the Borough of Koppel Police Department went to Phil's Inn with an arrest warrant for one Andrew Pounds. Upon being arrested, Pounds informed the officer that appellant, who was inside the bar, had just sold drugs to Pounds' brother. He also told the officer that appellant had the drugs in a change purse that bore the name "Joe."

The officer went back into the bar and located appellant standing next to Ralph Pounds, brother of Andrew Pounds. After asking appellant to go outside with him, the officer informed appellant that he had been accused of selling drugs in the bar. When the officer then asked appellant if he could

"pat him down," appellant responded, "Sure, I don't have anything on me." It appears that, at that time, appellant visibly possessed in his left hand a change purse which the officer took and unzipped. Inside the purse was some crack cocaine and ninety-eight dollars ($98.00).

Appellant was ultimately charged with possession[1] and possession with intent to deliver.[2] Prior to trial, appellant filed a motion to suppress the cocaine. Finding that the search of appellant was consensual, the trial court denied the motion. Following a trial by jury, appellant was convicted of possession. On appeal, the Superior Court affirmed the judgment of sentence. We granted appellant's petition for allowance of appeal in order to address the issue of whether in consensual search cases, the courts should employ a "waiver" analysis and not simply a "voluntariness" analysis in determining whether under Article I, Section 8 of the Pennsylvania Constitution the consent was valid.[3]

■ Our review of suppression rulings is circumscribed. Where the record supports the factual findings of the court below, we may reverse the suppression ruling only if the legal conclusions drawn from those facts are in error. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985).

■ Under both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, a search such as that at issue here, which is conducted without a warrant, is deemed to be *per se* unreasonable. *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (1997). Certain specifically established exceptions, one of which is a valid consent may, however, render an otherwise illegal search permissible. *Commonwealth v. Slaton*, 530 Pa. 207, 608 A.2d 5, 8–9 (1992). It is the state's burden to prove consent. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Commonwealth v. Silo*,

1. 35 P.S. § 780–113(a)(16).

2. 35 P.S. § 780–113(a)(30).

3. Although appellant raised this issue below, neither the trial court nor the Superior Court directly addressed it.

480 Pa. 15, 389 A.2d 62 (1978). This court, as well as the United States Supreme Court, has long adhered to the principle that for purposes of the Fourth Amendment, consent must have been given voluntarily. · *See Commonwealth v. Smith,* 470 Pa. 220, 368 A.2d 272, 276 (1977) and cases cited therein. At issue in the instant matter is whether, under Article I, Section 8 of the Pennsylvania Constitution, this test of "voluntariness" should include as well a finding that the subject of the search knowingly and intelligently waived his or her right to refuse to consent.

Appellant acknowledges that the United States Supreme Court, in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), decided this precise issue for Fourth Amendment purposes adversely to the position he is here espousing. He maintains, however, that given the enhanced privacy rights recognized under Article I, Section 8 of our state constitution, we should adopt a "constitutional waiver" standard for determining whether a consensual search is valid in Pennsylvania. According to appellant, a waiver standard similar to that adopted by the United States Supreme Court in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) [4], is appropriate here since by consenting to a warrantless search, one is waiving the right to be free from a warrantless search. Appellant argues, at certain points in his brief, that the police should be required to expressly advise the subject of the search that he or she has the right to refuse the search.

In *Schneckloth,* the Court held that where the subject of the search is not in custody and the state purports that the search

---

**4.** *Zerbst* involved the issue of the denial of counsel in a federal criminal trial. Significantly, the Court there held that under the Sixth Amendment, a criminal defendant is entitled to the assistance of counsel and that if he or she is unable to afford counsel, it is the government's obligation to provide counsel for that defendant. *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In discussing a defendant's asserted waiver of counsel, the Court explained that in order to preserve the fairness of the trial process, the government should bear the heavy burden of establishing that the defendant intentionally and knowingly abandoned the right to counsel before a valid waiver thereof would be found. *Id.* at 464, 58 S.Ct. 1019.

was consensual, the Fourth and Fourteenth Amendments dictate that, to be valid, the consent be voluntarily given and not the product of coercion or duress. Significantly, the Court held that a consent search is valid if it meets the test of "voluntariness." That test involves consideration of whether the confession was the product of an essentially free and unconstrained choice. 412 U.S at 225, 93 S.Ct. 2041. According to the Court, "voluntariness" is a question of fact to be determined from the totality of the circumstances and while knowledge of the right to refuse consent is a factor to consider in determining whether consent to search was voluntarily and knowingly given, it is not dispositive. In so holding, the Court reasoned that such a requirement would not only be impractical but it would also hamper legitimate police investigation. Two competing concerns—the legitimate need for consent searches and the assurance that the subject of the search not be coerced—dictated the Court's decision. *Id.* at 227–28, 93 S.Ct. 2041.

The Court in *Schneckloth* explicitly rejected the idea of applying the *Zerbst* "waiver" analysis to consent searches, essentially finding that analysis appropriate to preserving those constitutional rights guaranteed a criminal defendant in order to assure a fair trial, but not to those rights encompassed in the Fourth Amendment. Appellant nevertheless maintains that our case law supports the notion that under an independent state analysis, we would require an intelligent waiver. In support thereof, he cites to this court's decisions in *Commonwealth v. Gibson,* 536 Pa. 123, 638 A.2d 203 (1994) and *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226 (1996).[5]

---

5.  In *Comonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), we created a four-part methodology to aid in the analysis of state constitutional claims. Specifically, the court will look at:

1) the text of the Pennsylvania constitutional provision;
2) the history of the provision, including Pennsylvania case law.
3) related case-law from other states; and
4) policy considerations unique to Pennsylvania.

*Edmunds* 586 A.2d at 895.

In *Gibson,* the police arrived at an apartment building to investigate a party in a second floor apartment. By that time, the party in the second floor unit was already over. The police proceeded to the first floor apartment which was rented by Steven Fifoot. There were no noises emitting from this apartment nor were there people entering and leaving this apartment. Indeed, the police did not even possess knowledge of a party or underage drinking at this apartment. Nevertheless, one of the officers engaged Mr. Fifoot in conversation in the foyer of the apartment while the other two officers entered the apartment. No warrant had been obtained permitting entry into any unit in the building. The appellants, who were guests at this apartment, were ultimately cited for underage drinking.

On appeal to this court, appellants maintained that the police conducted an illegal search of this apartment and, therefore, all evidence obtained during that search should be suppressed. One of the contentions of the Commonwealth on appeal was that the owner of the unit, Mr. Fifoot, had consented to the search of the apartment. In rejecting that contention, this court, after noting that consent can validate an otherwise illegal search only where that consent is unequivocal, specific, and voluntary, stated that:

> It is only where there is an intentional relinquishment or abandonment of a known right or privilege that an effective waiver can be found. *United States v. Blalock,* 255 F.Supp. 268 (E.D.Pa.1966). The subject of the search must be made aware of his rights against a warrantless search for a waiver to be intelligent. *Id.*

*Gibson,* 638 A.2d at 207. It is this language in *Gibson* on which appellant in the instant matter relies. Significantly, *Blalock* was decided prior to *Schneckloth,* and thus, any implication therein which would dictate a requirement that the subject of a search must be specifically warned that he or she has a right to refuse consent to the search is of limited value. Moreover, appellant takes the quoted language out of context. Significantly, the *Gibson* court went on to hold that the search there could not be justified on the theory of consent since not

only did the police fail to announce that it was their intent to search the apartment, but also because Mr. Fifoot never expressly consented to the police entry. *Id.* In other words, there was no consent to even evaluate.

Similarly, in *Melendez* there was no evidence that the defendant expressly consented to police entry into her home. In that case, police had Melendez's house under surveillance and were in the process of applying for a search warrant when Melendez was seen leaving her home. Police immediately stopped the vehicle which she was driving, removed her from the vehicle, and searched her purse whereupon they discovered a .25 caliber handgun, a large amount of cash and a drug tally sales sheet. The police then informed Melendez that they were getting a search warrant for her home and asked that she accompany them to her home whereupon they then gained entry to the home by using her keys.

In rejecting the Commonwealth's contention that Melendez had consented to the search of her home, this court relied upon the fact that there had been no express consent given by Melendez to the search. Indeed, the court found specifically that Melendez's conduct demonstrated acquiescence only and not consent. Appellant in the instant matter points to the following excerpt from *Melendez,* arguing that it evidences that Pennsylvania law requires intelligent waiver in order for consent to be deemed valid:

> In this case, Melendez was not informed of her right to refuse to accompany police or her right to refuse their entry into her house. Clearly, she waived nothing, and she *certainly* did not freely and voluntarily consent to the police entry into her home.

*Melendez,* 676 A.2d at 230 (emphasis in the original). However, given the absence of any express consent in *Melendez,* this excerpt is of no avail to appellant's argument.

■ As appellant so notes, this court, in analyzing particular provisions of our state constitution, is not bound by the decisions of the United States Supreme Court that interpret similar provisions of the United States Constitution. *Com-*

monwealth v. Edmunds, 526 Pa. 374, 586 A.2d 887, 894 (1991).[6] However, we are not precluded from applying a like standard to our state constitutional provisions where our own independent state analysis does not suggest a distinct standard. Certainly this court has accorded greater protection to the citizens of this state under Article I, section 8 of our constitution under certain circumstances. See, e.g., Edmunds, supra declining to adopt the "good faith" exception to the exclusionary rule as articulated by the United States Supreme Court in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Commonwealth v. Sell, 504 Pa. 46, 470 A.2d 457 (1983)(holding that Article I, Section 8 guarantees a defendant accused of a possessory crime automatic standing to challenge the admissibility of evidence alleged to be the fruit of an illegal search notwithstanding the United States Supreme Court's rejection of such standing for Fourth Amendment purposes); and Commonwealth v. DeJohn, 486 Pa. 32, 403 A.2d 1283 (1979)(recognizing under Article I, Section 8 an expectation of privacy in bank records). However, in other instances we have found that the protections of the Fourth Amendment and Article I, Section 8 of our state constitution are coextensive. See, e.g., Commonwealth v. Waltson, 555 Pa. 223, 724 A.2d 289 (1998)(declining to find greater protection under Article I, Section 8 of our state constitution that would dictate that a warrant is overbroad if it permits a search to occur in any area of a single unit residence for which there is no probable cause); Commonwealth v. Williams, 547 Pa. 577, 692 A.2d 1031 (1997)(Article I, Section 8 provides a parolee no greater protection than the Fourth Amendment with regard to the search of his or her bedroom).

As noted above, our prior case law in this area of consensual searches has been confined to an analysis of the Fourth Amendment. See Smith, supra. We have not, however, directly spoken to the issue of whether Article I, Section 8 of our state constitution provides greater protection in this area.

6. In Edmunds, this court recognized that the wording of Article I, Section 8 is similar to that of the Fourth Amendment. Edmunds, 586 A.2d at 895–896.

A number of our sister states have analyzed specifically whether to adopt the *Schneckloth* voluntariness standard as the appropriate standard under their own state constitutions. Those states that have addressed this issue, however, have, for the most part, rejected the notion that knowledge of one's right to refuse consent to a warrantless search is required under the applicable state constitution, opting instead to follow the federal voluntariness standard which focuses on the totality of the circumstances as opposed to any one factor. *See, e.g., State v. Knaubert,* 27 Ariz.App. 53, 550 P.2d 1095 (1976); *People v. Hayhurst,* 194 Colo. 292, 571 P.2d 721 (1997); *State v. Berry,* 526 S.W.2d 92, 98 (Mo.Ct.App.1975); *State v. Osborne,* 119 N.H. 427, 402 A.2d 493 (1979); *State v. Robinette,* 80 Ohio St.3d 234, 685 N.E.2d 762 (1997); *Oregon v. Flores,* 280 Or. 273, 570 P.2d 965 (1977); *State v. Contrel,* 886 P.2d 107, 111–12 (Utah App. 1994); *State v. McCrorey,* 70 Wash. App. 103, 851 P.2d 1234 (1993); and *State v. Buzzard,* 194 W.Va. 544, 461 S.E.2d 50 (1995). Consistent with the pronouncements of the United States Supreme Court in *Schneckloth,* these cited decisions recognize that such knowledge on the part of the subject of the search may be a factor in ascertaining whether consent was voluntarily given, but decline the invitation to render such a factor determinative of that issue.

Our research reveals only three state appellate court decisions which have departed from the *Schneckloth* standard when analyzing the issue on independent state grounds. Mississippi, for example, has held that where the defendant raises a claim that his or her consent was not knowingly given, a determination of whether that consent was voluntary requires a finding that the defendant is cognizant of his or her right to refuse the request to search. *Graves v. Mississippi,* 708 So.2d 858 (Miss.1997). The Supreme Court of New Jersey, too, has rejected, for state constitutional purposes, the holding of *Schneckloth.* In *State v. Johnson,* 68 N.J. 349, 346 A.2d 66 (1975), it was held that where the state seeks to justify a warrantless search on the basis of consent, the state must prove that the person consenting knew, or was told by the

police, of his or her right to refuse consent to the search. The Supreme Court of Hawaii has ruled as well that the subject of an allegedly consensual encounter and/or search must be informed of his or her right to refuse to participate in the encounter or to refuse the search. *State v. Trainor*, 83 Hawai'i 250, 925 P.2d 818 (1996).

Finally, our decision in *Edmunds* directs that we review policy considerations unique to Pennsylvania jurisprudence in an effort to ascertain whether greater protections should be extended under our state constitution. Appellant essentially argues that to require an intelligent waiver of the right to refuse one's consent to an illegal search would protect and enhance one's privacy rights under our state constitution without any significant impact upon law enforcement. Appellant likens this issue to that of requiring *Miranda* warnings prior to obtaining a confession, noting that the giving of *Miranda* warnings has resulted in no significant reduction in the number of confessions. We are unpersuaded by appellant's argument. In short, we find no policy issues unique to Pennsylvania such as widespread police misconduct infringing upon our citizens' rights against unreasonable searches and seizures, that would cause us to depart from the federal standard. Indeed, consideration of all the *Edmunds* factors leads us to conclude that the federal voluntariness standard as enunciated in *Schneckloth* adequately protects the privacy rights obtained under Article I, Section 8 of our state constitution. It is important to remember that even under the federal standard, one's knowledge of his or her right to refuse consent remains a factor to consider in determining the validity of consent; it simply is not a determinative factor since other evidence is oftentimes adequate to prove the voluntariness of a consent.[7]

7. Evaluation of the voluntariness of a defendant's consent necessarily entails consideration of a variety of factors, factors which, of course, may vary depending on the circumstances. Accordingly, no hard and fast rule can be gleaned that would dictate what factors must be considered in each instance. We find instructive, however, the following factors considered by the Supreme Court of Appeals of West Virginia when evaluating the voluntariness of a defendant's consent: 1)

■ In the instant matter, it would serve no useful purpose to suppress the evidence obtained on the sole basis that there was no showing that appellant was aware of his right to refuse consent since it is clear that appellant voluntarily consented. After informing appellant that he had been accused of selling drugs, the officer asked appellant if he could "pat him down" whereupon appellant immediately responded in the affirmative, expressly disclaiming that he possessed any drugs. There is no evidence that the officer exerted any pressure upon appellant to submit to the search or exerted any force.

For all the foregoing reasons, we conclude that while the Pennsylvania Constitution provides greater privacy rights than the Fourth Amendment in certain respects, regarding the test for determining whether consent was freely and voluntarily given, those privacy rights are sufficiently protected where the federal standard of "voluntariness" has been met. Accordingly, we affirm the order of the Superior Court.

Justice NIGRO files a Dissenting Opinion.

NIGRO, Justice, dissenting.

I respectfully dissent from the majority opinion since I believe that when police seek consent to perform an otherwise unconstitutional search, they should be required under Article I, Section 8 of the Pennsylvania Constitution to expressly advise the subject of the search that he or she has the right to refuse to give consent and that any refusal will be respected.

As Appellant argues, a consent to search is, in reality, a waiver of one's rights under Article I, Section 8.[1] Consequent-

the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel. *Buzzard,* 461 S.E.2d at 57.

1. Article I, Section 8 "relates to freedom from unreasonable *searches and seizures,*" and "is meant to embody a strong notion of privacy, carefully safeguarded in this Commonwealth for the past two centuries." *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 896–97 (1991).

ly, for such a waiver to be valid, the Commonwealth should be required to demonstrate an "intentional relinquishment or abandonment of a known right or privilege," as it must for waivers of other constitutional rights. *See, e.g., Commonwealth v. Garrett,* 439 Pa. 58, 266 A.2d 82, 83 (1970); *Commonwealth v. Norman,* 447 Pa. 217, 285 A.2d 523, 526 (1971); *Commonwealth v. Vega,* 553 Pa. 255, 719 A.2d 227, 230 (1998). As this Court has stated,

> Regarding any rights guaranteed by either the United States Constitution or the Pennsylvania Constitution, for a waiver of those rights to be valid, the Commonwealth must prove by a preponderance of the evidence that the alleged waiver was intelligently made. Before finding a valid waiver, we must be convinced that an accused knows the nature of the constitutional rights involved.

*Commonwealth v. Coleman,* 477 Pa. 400, 383 A.2d 1268, 1271 (1978) (citations omitted).

The majority finds, however, that this analysis is inapplicable to one's waiver of his right under Article I, Section 8 to be free from unreasonable searches and seizures. Relying on *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the majority concludes that a person's consent to search, so long as it is given "voluntarily," is valid under our state constitution even when the subject of the search is unaware that he has every right to refuse to consent to an otherwise illegal search. *Schneckloth,* however, was based on the Fourth Amendment. Given this Court's consistent determination that Article I, Section 8 affords broader privacy rights than those provided by the Fourth Amendment, I wholeheartedly disagree with the majority that our state constitution sanctions a person's relinquishment of the right to refuse consent when he has no knowledge of such a right's existence. In my view, both our state constitution and common sense require that a person be aware of his rights before any waiver to those rights is constitutionally validated. *See Commonwealth v. Gibson,* 536 Pa. 123, 638 A.2d 203, 207 (1994) ("the subject of the search must be made aware of his

rights against a warrantless search for a waiver to be intelligent").[2]

By holding that Appellant's consent in the instant case was valid merely because "there is no evidence that the officer exerted any pressure upon Appellant to submit to the search or exerted any force," the majority, I fear, ignores the practical impact that a police officer's request for consent to search has on the average citizen. As stated by the New Jersey Supreme Court in *State v. Johnson,*

> ... where the State seeks to justify a search on the basis of consent it has the burden of showing that the consent was voluntary, an essential element of which is knowledge of the right to refuse consent. *Many persons, perhaps most, would view the request of a police officer to make a search as having the force of law.* Unless it is shown by the State that the person involved knew that he had the right to refuse to accede to such a request, his assenting to the search is not meaningful. One cannot be held to have waived a right if he was unaware of its existence.

*Johnson,* 68 N.J. 349, 346 A.2d 66, 68 (1975) (emphasis added); *see also Schneckloth,* 412 U.S. at 288, 93 S.Ct. 2041 (J. Marshall, dissenting) ("under many circumstances a reasonable person might read an officer's 'May I' as the courteous expression of a demand backed by force of law"). If a person believes he has no choice but to consent upon an officer's request, then that person's consent cannot be said to have been given voluntarily, much less knowingly and intelligently. The safeguard advocated by Appellant—a simple statement by the police that the subject of the search has the lawful right to withhold consent to search—would serve to protect not only

---

**2.** Although I agree with the majority that the facts of *Gibson* are distinguishable from those presented by the instant case, I disagree with its conclusion that Appellant is precluded from relying on *Gibson* to support his argument because he takes the above-quoted language "out of context." *Gibson* clearly cites this proposition as a generally accepted principle of law. And while *Gibson* does cite a pre-*Schneckloth* case in support of its proposition that the subject must be informed of his rights against a warrantless search before any waiver to those rights will be deemed valid, *Gibson* was decided over twenty years after *Schneckloth* and retains precedential value in this Commonwealth.

those who are unaware of their rights, but also those who, although perhaps aware of their rights, become too intimidated to refuse what can readily be perceived as an official demand.

Unlike the majority, I can see no prejudice that would be born to the Commonwealth if police were required to ensure that the person to be searched was informed of his right to withhold consent. If the Commonwealth fears that informing persons of their rights before asking them to waive those rights would hamper its ability to search for and obtain evidence, it must be remembered that police always retain the ability to seek a search warrant in their efforts to obtain evidence. There is, however,

> ... little reason to believe, as the *Schneckloth* Court apparently did, that the requirement of informed consent would reduce the number of consent searches obtained by the police. It has not occurred with the Fifth Amendment waiver even in the wake of *Miranda*, and there is no reason to expect it will occur in the face of the requirement to inform of the right to refuse a consent to search. Many cases hinge on confessions, despite the *Miranda* warning requirement. Although somewhat different considerations are often present in a confession situation, such as the prior arrest of the defendant, and thus more than mere suspicion exists at that point, there is little cause to believe that warnings of the right to refuse to consent to search will, in any great degree, cause a vast reduction in the number of consent searches.

Appellant's Brief at 28 (quoting McGlaughlin, David, "Consent Searches and Knowledge of the Right to Refuse," 12 Search and Seizure Law Report 1:93, 99 (January 1985)).

Since I believe Pennsylvania citizens are entitled under Article I, Section 8 to be informed of their constitutional rights before any waiver to those rights will be deemed valid, including their right to refuse consent to an otherwise unconstitutional search, I must respectfully dissent.