J-S32043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAUL BROWN, | : | |
| | : | |
| Appellant | : | No. 1473 EDA 2018 |

Appeal from the Judgment of Sentence April 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000415-2017

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 23, 2019**

Raul Brown (Appellant) appeals from the judgment of sentence imposed

after the trial court convicted him of persons not to possess firearms.[1]  After

careful consideration, we affirm.

The trial court summarized the relevant facts of this case as follows:

> On November 8, 2016, at about 8:30 p.m., Philadelphia Police
> Officers Michael Inemer and William Barr were on routine patrol
> in the area of the 600 block of East Ontario Street in Philadelphia
> when they observed a vehicle driven by Appellant leave a parking
> space and travel east on Ontario Street.  The officers conducted a
> traffic stop of the vehicle because its headlights and tail lights
> were off when it left the parking space and entered travel.  The
> officer testified that the vehicle had an unusual amount of air
> fresheners in it and, when asked for paperwork, Appellant could
> only produce the title for the vehicle and his driver's license.
>
> Since Appellant was unable to produce all of the required
> paperwork, Officer Barr asked Appellant if he and his partner could
> search the vehicle.  Appellant stated that he was the owner of the

_____

[1] 18 Pa.C.S.A. § 6105(a)(1).

vehicle, having purchased it the previous day. Appellant verbally consented to the search and signed a consent form. The officers then searched the vehicle and, in its trunk, Officer Barr recovered a .9 millimeter Smith and Wesson semiautomatic handgun and loose bullets in some sort of a belt. The firearm was placed on a property receipt. Appellant did not have a license to possess a firearm and had prior convictions that made him ineligible to do so.

While Appellant was incarcerated, he made a telephone call which was recorded by prison authorities. During the call, Appellant stated, "I did this. I put myself in here. I know better. I take the majority of this blame. I didn't have to live like this." The tape was admitted into evidence.

Trial Court Opinion, 9/27/18, at 2-3 (footnote and record citations omitted).

On September 28, 2017, Appellant appeared before the [trial court] for a Motion to Suppress a firearm recovered by police in the trunk of a car that Appellant was driving. At the conclusion of the hearing, the [trial court] denied Appellant's motion and a trial was held on February 7, 2018 . . ., sitting without a jury. At the conclusion of the trial, [the trial court] found Appellant guilty of the crime of Possession of Firearm by a Prohibited Person, 18 Pa.C.S.[A.] § 6105[(a)(1)].

On April 18, 2018, [the trial court] imposed a sentence of five to ten years [of] incarceration on the Possession of Firearm by a Prohibited Person conviction. On May 16, 2018, Appellant filed a notice of appeal followed by a counseled court-ordered Pa.R.A.P. 1925(b) Statement of Matters raised on Appeal.

*Id.* at 1-2.

On appeal, Appellant presents the following issue for review:

Did the [t]rial [c]ourt err by denying Appellant's Motion to Suppress Physical Evidence (i.e. the gun found in the trunk of the car being driven by Appellant), where the evidence did not establish that his consent to search was obtained voluntarily and in accordance with lawful police procedure or that Appellant's vehicle was subject to impoundment and an inventory search?

Appellant's Brief at 3.

Our standard of review is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted). Importantly, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). As this Court has explained:

> A search conducted without a warrant is constitutionally impermissible unless an established exception applies. *Commonwealth v. Slaton*, 608 A.2d 5, 8-9 ([Pa.] 1992). A consensual search is one such exception, and the central inquiries in consensual search cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent, and the voluntariness of the consent given. [*Commonwealth v. Cleckley*, 738 A.2d 427, 433 (Pa. 1999)]. To establish a valid

consensual search, the Commonwealth must first prove that the individual consented during a legal police interaction. ***Commonwealth v. Strickler***, [] 757 A.2d 884, 889 ([Pa.] 2000). Where the interaction is lawful, the voluntariness of the consent becomes the exclusive focus. ***Id.***; ***Commonwealth v. Acosta***, 815 A.2d 1078, 1083 (Pa. Super. 2003) (*en banc*).

***Commonwealth v. Randolph***, 151 A.3d 170, 176-77 (Pa. 2016).

"To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." ***Commonwealth v. Pratt***, 930 A.2d 561, 563 (Pa. Super. 2007). Courts in this Commonwealth have recognized three types of interactions between the police and a citizen: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention . . . requires a reasonable suspicion that criminal activity is afoot. A custodial search is an arrest and must be supported by probable cause.

***Commonwealth v. Newsome***, 170 A.3d 1151, 1154 (Pa. Super. 2017) (citation omitted).

Appellant does not dispute that Officers Inemer and Barr had probable cause to stop Appellant's vehicle for violations of the Pennsylvania Vehicle Code. Instead, Appellant argues that he did not voluntarily consent to the officers' search of the vehicle. Specifically, Appellant contends that his consent to search his vehicle was not voluntary because he did not give it until

the officers placed him in the back of a police vehicle. Appellant further asserts that Officer Barr was unable to specify precisely when and where Appellant gave consent. Appellant argues that Officer Barr conceded that he altered the time written on the consent to search form.

Regarding consent to searches, this Court has stated:

> The Commonwealth bears the burden of proving that the defendant consented to a warrantless search. **See Commonwealth v. Acosta**, 815 A.2d 1078, 1083 (Pa. Super. 2003) (*en banc*). To establish a voluntary consensual search, the Commonwealth must prove "that a consent is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances." **Strickler**, 757 A.2d at 901.

**Randolph**, 151 A.3d at 179.

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

**Commonwealth v. Miller**, 186 A.3d 448, 451 (Pa. Super. 2018) (citation omitted), **appeal denied**, 199 A.3d 858 (Pa. 2018).

In concluding that Appellant consented to the search, the trial court explained:

> After Appellant stopped, Officer Barr observed that the vehicle had an unusual amount of air fresheners on the dashboard. In the officer's experience, air fresheners are often used to mask the odor of narcotics. (N.T.[,] 9/28/17, [at] 11). Appellant also did not have paperwork for the vehicle other than the title. As such, the officers decided to Live Stop the vehicle. ([**Id.** at] 12, 14).

> The police asked Appellant for permission to search the car and he gave both oral and written signed consent to do so after being advised several times that he was not obliged to give such consent. ([*Id.* at] 11-12, 14-15).

Trial Court Opinion, 9/27/18, at 5.

Based on our review of the certified record, particularly the transcript of Appellant's suppression hearing, we conclude that the trial court accurately summarized the evidence presented at the hearing. Notably, Officer Barr's testimony reveals that, contrary to Appellant's assertion, the officers did not place Appellant into the back of their police vehicle until after Appellant consented to the search of his vehicle. N.T., 9/28/17, at 21. Although the record is unclear as to precisely when during the stop Appellant consented to the search, the record nevertheless reflects that Appellant consented, both orally and in writing, to the search of his vehicle prior to the officers placing him in the back of their vehicle and prior to the search. *Id*. Moreover, the record contains no evidence that Officers Inemer and Barr used duress or coercive tactics to obtain Appellant's consent.

Consistent with the foregoing, the trial court did not abuse its discretion in determining that Appellant consented to the search of his vehicle. *See Randolph*, 151 A.3d at 179. We thus conclude that the trial court did not err in denying Appellant's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/19