J. S61007/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
          :         PENNSYLVANIA
         v.        :
          :
MICHAEL LAMONT ELLIS,      :        No. 1560 WDA 2013
          :
       Appellant   :

Appeal from the Judgment of Sentence, July 24, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0003801-2012

BEFORE: FORD ELLIOTT, P.J.E., WECHT AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED DECEMBER 18, 2014**

Following a jury trial, Michael Ellis was convicted of fleeing or elluding, driving under the influence ("DUI") .16 or higher, DUI-causing accident, DUI-general impairment, recklessly endangering another person ("REAP"), driving under suspension, and numerous summary offenses. Herein, he appeals from the judgment of sentence entered July 24, 2013, in the Court of Common Pleas of Allegheny County. We affirm.

Officers Jeffrey Labella and Elizabeth Vitalbo of the Pittsburgh Police Department were on patrol duty in the early morning hours of December 31, 2011, in the Point Breeze/Squirrel Hill area of the city. At approximately 3:40 a.m., the officers observed the black Jeep on Penn Avenue swerving on the roadway. Appellant's vehicle made a right-hand turn against a red light on South Dallas Avenue without stopping or signaling. On Dallas, the

---

* Retired Senior Judge assigned to the Superior Court.

officers observed the Jeep continue to swerve and cross the centerline and travel off the roadway to the right-hand side. After observing these traffic violations, the officers activated their lights and sirens and attempted a traffic stop. The Jeep did not come to a complete stop, but the engine remained on and the officers testified that the Jeep appeared to inch forward as they approached. Using the police vehicle's P.A. system, the officers got appellant to finally put his vehicle in park. (*Id.* at 39.) However, appellant did not pull over to the curb, but stopped the car in the middle of the road. (*Id.* at 56.) When the officers approached, they suspected that he might be intoxicated upon observing his glassy and bloodshot eyes and hearing his slurred speech. (*Id.* at 41-42.)

Appellant failed to comply with the officers' verbal instructions to put the car in park. Instead, he turned the steering wheel in the direction of Officer Labella and drove away at a rapid speed. (*Id.* at 42-43.) Officer Labella had to jump backwards into the opposing lane of traffic to avoid being struck by appellant's car. (*Id.* at 43, 56.) The officers immediately pursued appellant's vehicle.

Appellant drove erratically through a residential neighborhood; he was driving approximately 60 miles per hour in a 25-miles-per-hour zone. (*Id.* at 44.) He went through two red lights without pausing or stopping, at the corner of Wilkins and Beechwood and one at Wilkins and Shady. (*Id.*) Near the intersection of Wilkins and Wightman, appellant's vehicle crossed the

opposite lane of traffic and went up on the sidewalk. (*Id.* at 44-45, 72.) The vehicle then hit several parked vehicles and two telephone poles. (*Id.*) The vehicle finally came to rest head-on with a tree.

The officers approached with guns drawn and instructed appellant to show his hands; appellant did not comply. (*Id.* at 74-75.) To remove appellant from the vehicle, Officer Labella had to smash the passenger side window, as the doors would not open. Appellant was pulled through the window and placed under arrest. (*Id.* at 74-76.)

Appellant was transported to Mercy Hospital where Officer Kevin Walters, an impaired driving specialist, obtained his consent to a blood draw for chemical testing. (*Id.* at 112-113.) As he consented, refusal warnings were not read to appellant. Appellant's blood alcohol content was .242. (*Id.* at 129.)

Appellant filed a motion to suppress. Following a hearing, the Honorable Jill E. Rangos denied appellant's motion. A jury trial was held on April 17-18, 2013, and appellant was convicted of the aforementioned crimes.[1] On July 24, 2013, appellant was sentenced to an aggregate term of 12 to 72 months' incarceration with a consecutive period of three years' probation. Appellant's post-sentence motion was denied on August 5, 2013. A timely notice of appeal followed, and the following issues have been preserved for our review:

---

[1] Appellant was found not guilty of escape.

    I.     WAS THE EVIDENCE INSUFFICIENT TO SUPPORT THE CONVICTION FOR RECKLESSLY ENDANGERING ANOTHER PERSON, WHERE THE EVIDENCE FAILED TO ESTABLISH EITHER THAT OFFICER LABELLA WAS PLACED IN ACTUAL DANGER OR THAT THE REQUISITE MENS REA OF RECKLESSNESS COULD BE PROPERLY INFERRED?

    II.    DID THE TRIAL COURT ERR IN DENYING THE MOTION TO SUPPRESS THE BLOOD TEST EVIDENCE WHERE [APPELLANT] WAS NOT IN A PHYSICAL OR MENTAL STATE IN WHICH HE COULD FREELY AND VOLUNTARILY GIVE CONSENT DUE TO THE NATURE OF HIS INJURIES AND ONGOING MEDICAL TREATMENT?

    III.    DID THE TRIAL COURT ABUSE ITS DISCRETION IN IMPOSING A MANIFSTLY [sic] EXCESSIVE AND UNREASONABLE SENTENCE WHICH FAILED TO CONSIDER REHABILITATIVE NEEDS?

Appellant's brief at 7.

Appellant first argues that the evidence was insufficient to support his conviction for REAP. Specifically, appellant argues that there was no evidence to support a finding that appellant placed Officer Labella in actual danger or that he acted with the requisite **mens rea**. We disagree.

In reviewing a claim challenging the sufficiency of the evidence to support the verdict, we:

> view[] all the evidence admitted at trial in the light most favorable to the verdict winner, [and determine if] there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.

> In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super. 2003) (citations omitted).

Pursuant to 18 Pa.C.S.A. § 2705, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." "Serious bodily injury" is defined as injury that "creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. To sustain a conviction for REAP, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so." *Commonwealth v. Hopkins*, 747 A.2d 910, 915 (Pa.Super. 2000). "Danger, not merely the apprehension of danger, must be created." *Id.* at 916. "The *mens rea* for recklessly

endangering another person is 'a conscious disregard of a known risk of death or great bodily harm to another person.'" **Id.**

Viewing the evidence in the light most favorable to the Commonwealth, as we must under our standard of review, we conclude the evidence sufficiently supports appellant's conviction. The Commonwealth presented the testimony of two police officers that witnessed appellant's actions. Officer Vitalbo testified that during the initial traffic stop, appellant cut the wheel of his vehicle all the way to the left toward Officer Labella, who was inches from the driver's side door. (Notes of testimony, 4/17-18/13 at 42-43.) Officer Labella testified, "I asked him for his documents; his driver's license, proof of insurance. He just kind of stared forward . . . He sort of looked at me, cut the wheel as hard as he could to the left and just floored it." (**Id.** at 67.) Officer Labella testified that he had to jump backwards into the opposing lane of traffic to avoid being hit by the car or getting his feet run over. (**Id.** at 68, 70.)

Clearly, these facts and the reasonable inferences drawn therefrom are sufficient to permit the jury to have found appellant recklessly endangered Officer Labella. At no time did it appear appellant was merely reckless; but rather, he suddenly swerved his car purposefully toward the officer which predictably would result in serious injury or even loss of life. The likelihood that the officer would be injured or even killed was highly predictable.

Appellant's actions demonstrate the "conscious disregard of known risk"

which supports a conviction for REAP.

Next, appellant argues that the trial court erred in denying the motion

to suppress. When reviewing a challenge to a trial court's denial of a

suppression motion, our standard of review is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-362 (Pa.Super. 2012),

*appeal denied*, 57 A.3d 68 (Pa. 2012), quoting *Commonwealth v. Jones*,

988 A.2d 649, 654-656 (Pa. 2010).

Specifically, appellant argues that the blood draw, which resulted in

the .242 BAC reading, was illegal as it was done without his consent and

there is no documentation supporting such a theory. (Appellant's brief at

29.) Additionally, appellant avers that he was not in a physical or mental state in which he could have voluntarily provided consent. (*Id.*)

Initially, we keep in mind several principles. The withdrawal of blood is a search subject to the protections of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. ***Commonwealth v. Kohl***, 615 A.2d 308, 312-315 (Pa. 1992). To require a person to undergo a blood test, police must generally have probable cause to believe the person has been driving under the influence of a controlled substance. *Id.* at 313, 315-316; ***Commonwealth v. Thur***, 906 A.2d 552, 567 (Pa.Super. 2006), ***appeal denied***, 946 A.2d 687 (Pa. 2008). However, it has long been established that absent probable cause, the withdrawal of blood may be justified by showing the consent of the person in question. ***See Schneckloth v. Bustamonte***, 412 U.S. 218, 219 (1973) (reiterating that it is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").

Recently, in ***Commonwealth v. Smith***, 77 A.3d 562 (Pa. 2013), our supreme court reversed a decision of this court that vacated multiple convictions related to a fatal motor vehicle accident, including several counts of DUI and one count of homicide by vehicle. Our supreme court observed that a panel of this court had held that "[the police] failure to inform [Smith] of the criminal consequences of the blood test had the effect of misleading

or coercing [Smith], rendering his consent unknowing and invalid." ***Id.*** at 567. However, in reaching its decision to reverse this court's determination, our supreme court stated the following:

> [T]his Court has been clear that **no one fact or circumstance can be talismanic in the evaluation of the validity of a person's consent**. Accordingly, to the extent the Superior Court held that police officers must explicitly inform drivers consenting to blood testing that the results of the test may be used against them in criminal prosecutions in order for the consent to be valid, it went too far.

***Id.*** at 572 (emphasis added) (citations omitted).

In ***Smith***, our supreme court went on to explain the validity of consent to a blood test following an accident as follows:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice--not the result of duress or coercion, express or implied, or a will overborne--under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant . . . . Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation. ***See Commonwealth v. Cleckley***, 558 Pa. 517, 738 A.2d 427, 433 (1999) ("one's knowledge of his or her right to refuse consent remains a factor in determining the validity

of consent . . ." and whether the consent was the "result of duress or coercion.")

*Id.* at 573 (some internal citations and quotation marks omitted).  The court in **Smith** reviewed the totality of the circumstances of the case and ultimately concluded that Smith had consented to the blood testing; it provided the following analysis:

> Objectively considering the totality of the circumstances, we find that the trial court correctly found that Officer Agostino did not use deceit, misrepresentation, or coercion in seeking [Smith's] consent for the blood draw and testing, thus not invalidating the blood draw or the results therefrom on those bases.  Here, the facts reveal that [Smith] was a college graduate, was not injured, and was explicitly informed of his right to refuse the test. [Smith] further understood that the test was to rule out the possibility that alcohol or drugs were factors in the accident.  With all of these understandings in mind and his faculties fully about him, [Smith] willingly went to the hospital and participated in the blood draw.  On the basis of the totality of the evidence, when viewed objectively, we conclude that a reasonable person's consent to this blood draw would have contemplated the potentiality of the results being used for criminal, investigative, or prosecutorial purposes.  Thus, Officer Agostino validly obtained from [Smith] his consent for the blood alcohol test.

*Id.* at 573-574 (footnotes omitted).

Our review of the record reflects that the trial court specifically found that appellant consented to the blood test.  Likewise, our review of the facts presented to the trial court leads us to the same conclusion.  Officer Walters testified that he was informed there was a crash possibly involving a DUI

- 10 -

and he was needed in connection with a blood draw. (Notes of testimony, 4/17-18/13 at 15-20.) The officer was provided with appellant's identifying information and then introduced himself to appellant at the hospital and explained that he was an impairment expert. (*Id.* at 4, 12-13.) Officer Walters was unaware of whether appellant had been treated with any drugs or painkillers; however, when asked if appellant was lucid and understood what he was saying, the officer testified that appellant was able to answer all of the questions asked. (*Id.* at 4-5, 10, 12.) Specifically, Officer Walters testified that appellant gave permission for blood that had already been drawn to be tested for blood alcohol content. (*Id.* at 5, 12.) The officer testified that if appellant had refused, he would have documented the refusal in his paperwork. (*Id.* at 5-7.) Within a few hours of the blood draw, appellant left the hospital on foot and under his own power. (*Id.* at 13-19.) There was no evidence presented at the suppression hearing that appellant's consent was the product of duress, coercion, or undue pressure. Appellant himself testified that he was told he would be free to go and would be contacted later about a citation. (*Id.* at 23.)

Appellant's argument is based on the assertion that he was a "bloody mess." (Appellant's brief at 21.) We note that Officer Walters conceded that appellant's face was bloody. However, there is no support for the assumption that the blood on appellant's face or his physical injuries resulted in his inability to give consent. The trial court also found appellant's

testimony was "not credible as his statements were inconsistent and self-serving." (Trial court opinion, 5/7/14 at 5.)

We are constrained to conclude that under the totality of the circumstances, appellant possessed the minimal awareness necessary to consent to blood testing. As the court concluded in **Smith**, "[o]n the basis of the totality of the evidence, when viewed objectively, we conclude that a reasonable person's consent to this blood draw would have contemplated the potentiality of the results being used for criminal, investigative, or prosecutorial purposes." **Smith**, **supra** at 573.

The final issue presented concerns the discretionary aspects of sentencing. Appellant is challenging the discretionary aspects of sentencing for which there is no automatic right to appeal. **Commonwealth v. Koren**, 646 A.2d 1205, 1207 (Pa.Super. 1994). This appeal is, therefore, more appropriately considered a petition for allowance of appeal. 42 Pa.C.S.A. § 9781(b). Two requirements must be met before a challenge to the judgment of sentence will be heard on the merits. **Koren**, **supra**. First, the appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. **Id.**; Pa.R.A.P. 2119(f). Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. 42 Pa.C.S.A. § 9781(b); **Commonwealth v. Urrutia**, 653 A.2d 706, 710 (Pa.Super. 1995).

The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. *Commonwealth v. Maneval*, 688 A.2d 1198, 1199-1200 (Pa.Super. 1997). Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Id.*

Appellant has included in his brief the mandatory concise statement of reasons relied upon for allowance of appeal from the discretionary aspects of his sentence. (Appellant's brief at 7-8.) Therein, appellant complains that his sentence, which was within the statutory limits, was manifestly excessive because the court focused solely on the protective needs of the community and failed to consider his rehabilitative needs. (Appellant's brief at 39.) Such an argument does not raise a substantial question. *Commonwealth v. Edwards*, 71 A.3d 323 (Pa.Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013), quoting *Commonwealth v. Dunphy*, 20 A.3d 1215, 1222 (Pa.Super. 2011) (a panel of this court has determined an allegation that the sentencing court "failed to consider" or "did not adequately consider" various factors does not raise a substantial question that the sentence was inappropriate).

J. S61007/14

Judgment of sentence affirmed.

Strassburger, J. files a Concurring Memorandum.

Wecht, J. concurs in the result of the Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2014