J-A15019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBIN DWAYNE SMITH | : | |
| | : | |
| Appellant | : | No. 1927 MDA 2017 |

Appeal from the Judgment of Sentence November 15, 2017
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0001098-2016

BEFORE:  PANELLA, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 29, 2018**

Robin Dwayne Smith (Appellant) appeals from the judgment of sentence imposed following his convictions of driving under the influence of alcohol (DUI) – general impairment and DUI – high rate of alcohol.[1]  We affirm.

The trial court detailed the factual and procedural history of this case as follows:

> The credible testimony established that on March 12, 2016, Officer [Matthew] Lynch [(Officer Lynch)] was on routine patrol in the borough of Chambersburg in the area of the intersection of Stouffer Avenue and Wayne Avenue, near the Giant grocery store. Notes of Testimony, December 8, 2016 at 5.  He observed a vehicle turn right from Stouffer Avenue onto Wayne Avenue heading west toward the Borough of Chambersburg and then accelerate quickly.  N.T. at 6.  The vehicle crossed the center line. *Id.*  He attempted to pace the vehicle to get an idea of how fast it was going, but the vehicle kept getting further away.  *Id.*  He attempted to maintain the same distance between his patrol

_____

[1]  75 Pa.C.S.A. § 3802(a)(1), (b).

vehicle and the suspect vehicle. In doing so, Officer Lynch had to drive his patrol vehicle at speeds in excess of 60 mph. *Id.* When it appeared the patrol vehicle and the suspect vehicle were traveling at the same pace, Officer Lynch noted that he was traveling at 63 mph. N.T. at 7. Officer Lynch explained that he followed the vehicle from the 900 block of Wayne Avenue to the 400 block of Wayne Avenue before initiating a traffic stop. N.T. at 6. The speed limit on the area of roadway in question is 35 mph. N.T. at 7.

Officer Lynch admitted that he did not pace the suspect vehicle for three-tenth[s] of a mile and the speedometer in his patrol vehicle had not been recently calibrated to ensure accuracy. N.T. at 21, 22. When asked how he c[ould] be positive that the vehicle was going the speed that he alleged, Officer Lynch explained,

> Based on my training and experience. I drive those roads every single day. We clock vehicles using speed timing devices, which are calibrated, and so it's pretty easy to differentiate between a vehicle going 35 and a vehicle going almost 65.

N.T. at 22.

Officer Lynch stopped the suspect vehicle for failing to obey traffic control devices; specifically, the speed limit signs posted in the area. N.T. at 7. Traveling in excess of the posted speed limit is particularly dangerous in this residential stretch of Wayne Avenue because of the many driveways, intersecting roadways, and some businesses along the roadway. *Id.*

Officer Lynch approached the suspect vehicle and identified himself. . . . [Appellant] produced only his license, not his registration and insurance card, causing the officer to need to clarify what he had requested and needed. N.T. at 13, 14. [Appellant] had difficulty locating these items. When asked by Officer Lynch why he was "going so fast," [Appellant] responded that "his house was just up the road." N.T. at 12. Officer Lynch observed [Appellant]'s speech to be raspy, low and "thick" and his eyes to be bloodshot and glassy. *Id.* There was a strong odor of cigarette smoke masking other odors coming from [Appellant]'s vehicle. N.T. at 12. When asked, [Appellant] admitted to the officer that he had two drinks while working as a DJ at Pappy's (a bar in Waynesboro). N.T. at 12-13. Officer Lynch observed a

large amount of DJ equipment in the back of [Appellant]'s vehicle. N.T. at 12.

While [Appellant] was still in his vehicle, Officer Lynch attempted to gauge [Appellant]'s sobriety by looking up his nostrils and in his mouth; [Appellant] appeared lethargic. N.T. at 14. Officer Lynch requested that he recite the alphabet starting with letter D through letter R; however, [Appellant] recited D through S and then uttered an expletive, realizing his error. N.T. at 15. Officer Lynch requested the assistance of another officer for backup pursuant to department policy. N.T. at 15.

Officer Lynch asked [Appellant] to exit the vehicle to conduct standardized field sobriety testing. Upon attempting to administer the horizontal gaze nystagmus test, Officer Lynch determined that the results were inconclusive, as [Appellant] had significant difficulty just following the instructions. N.T. at 16. He also attempted to administer the walk-and-turn test; however, as [Appellant] was unable to maintain his balance to proceed past the instruction phase, the test was not finished. N.T. at 17. [Appellant] reported that he just wasn't coordinated. *Id.* A preliminary breath test was administered which was positive for alcohol. N.T. at 17. In addition, away from the heavy cigarette odor of the vehicle's interior, Officer Lynch detected the odor of alcoholic beverages coming from the [Appellant's] breath. *Id.*

Officer Lynch subsequently placed [Appellant] under arrest for suspicion of driving under the influence, placed him in handcuffs, and transported him to the Chambersburg Hospital. N.T. at 18, 25. He told [Appellant] they were going to the hospital to get a blood sample. N.T. at 25. Two blood samples were drawn by the phlebotomist; one to test for the presence of alcohol, one to test for the presence of controlled substances. N.T. at 18. The blood alcohol concentration was determined to be .113 percent. No controlled substances were present in [Appellant]'s blood.

Prior to the blood draw, Officer Lynch did not advise [Appellant] of the . . . warnings in the DL-26 form; instead, Officer Lynch "just told him that he was under arrest for a DUI and [the officer] was requesting a blood test from him at the hospital." N.T. at 18-19. [Appellant] was not advised that if he refused a blood test he could be subject to an enhanced criminal penalty upon conviction for DUI. N.T. at 19. In fact, Officer Lynch explained that it was

typically the procedure of the Chambersburg Police Department to discuss the penalty for refusal

> [...] only if the subject begins questioning about whether or not they have to give a blood test. Once somebody begins questioning me about that, at that point in time, I would read them the DL-26 at the hospital, just to clarify their rights. However, absent [Appellant] asking me any questions about whether or not he had to give his blood or any of the repercussions, that protocol was not initiated. Therefore, we d[id] not read the DL-26.

Trial Court Opinion, 2/3/17, at 2-5 (footnotes omitted).

Appellant was charged with one count each of (DUI) – general impairment and DUI – high rate of alcohol. On August 22, 2016, Appellant filed a pre-trial motion to suppress in which he challenged the constitutionality of his vehicle stop. On October 14, 2016, with the trial court's permission, Appellant filed an amended motion to suppress, which added a challenge to the constitutionality of his blood draw under **Birchfield v. North Dakota**, 136 S. Ct. 2160 (2016). On December 8, 2016, the trial court held a hearing on Appellant's suppression motion where Officer Lynch, as the sole witness, testified for the Commonwealth. On February 3, 2017, the trial court denied the motion.

On October 2, 2017, the trial court held a stipulated bench trial, after which it found Appellant guilty of the aforementioned crimes. On November 15, 2017, the trial court sentenced Appellant to 30 days to 6 months of incarceration. This timely appeal followed. Both Appellant and the trial court

have complied with Rule 1925 of the Pennsylvania Rules of Appellate Procedure.

On appeal, Appellant presents the following issues for review:

I.    Did [t]he [t]rial [c]ourt err in finding probable cause for a vehicle stop?

II.    Did [t]he [t]rial [c]ourt err in finding [Appellant]'s lack of objection to a blood draw is the equivalent to consenting to the blood draw?

Appellant's Brief at 4.

Both of Appellant's issues challenge the trial court's decision to deny his suppression motion.  The standard of review is as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. ***Commonwealth v. Woodard***, [] 129 A.3d 480, 498 ([Pa.] 2015).  We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*.  ***Commonwealth v. Galvin***, [] 985 A.2d 783, 795 ([Pa.] 2009).  Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.  ***Commonwealth v. Poplawski***, [] 130 A.3d 697, 711 ([Pa.] 2015).  Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.  ***In the Interest of L.J.***, [] 79 A.3d 1073, 1085 ([Pa.] 2013).

***Commonwealth v. Smith***, 177 A.3d 915, 918 (Pa. Super. 2017) (quoting

***Commonwealth v. Singleton***, 169 A.3d 79, 82 (Pa. Super. 2017)).  "It is

within the suppression court's sole province as factfinder to pass on the

- 5 -

credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013).

First, Appellant argues that Officer Lynch lacked the probable cause necessary to conduct a vehicle stop. Specifically, Appellant asserts that Officer Lynch lacked probable cause to stop him for a speeding violation because Officer Lynch did not clock Appellant's speed, did not pace Appellant's vehicle for the required three tenths of a mile, and had not recently calibrated his speedometer. Appellant thus maintains that there is no accurate evidence indicating his speed at the time of the vehicle stop. Additionally, Appellant contends that is no other evidence indicating that he violated any other traffic law.

The analysis of the quantum of cause required for a traffic stop begins with Section 6308(b) of the Motor Vehicle Code, which provides:

> **(b) Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

Section 6308(b) requires only reasonable suspicion in support of a vehicle stop for gathering information necessary to enforce the Vehicle Code.

However, a police officer must have probable cause to support a vehicle stop where the officer's investigation following the stop serves no "investigatory purpose relevant to the suspected [Motor Vehicle Code] violation." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), ***appeal denied***, 25 A.3d 397 (Pa. 2011).  Our Supreme Court has explained:

> Indeed, the language of § 6308 reflects this very intent.  Stops based on reasonable suspicion are allowed for a stated investigatory purpose: "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title."  75 Pa.C.S. § 6308(b).  This is conceptually equivalent to the purpose of a ***Terry***[2] stop.  It does not allow all stops to be based on the lower quantum— it merely allows this for investigatory stops, consistent with the requirements of both federal and state constitutions.    We  interpret  the  legislature's modification of § 6308 as merely eliminating the statutory requirement of a greater level of information for a stop under the Vehicle Code than is constitutionally required for all other stops.

***Commonwealth v. Chase***, 960 A.2d 108, 116 (Pa. 2008).  "[I]f the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop – if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion." ***Id.*** at 115.

---

[2] ***Terry v. Ohio***, 392 U.S. 1 (1968).

Probable cause exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Stultz***, 114 A.3d 865, 883 (Pa. Super. 2015) (quotations and citations omitted). "We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." ***Commonwealth v. Hernandez***, 935 A.2d 1275, 1284 (Pa. 2007). "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." ***Commonwealth v. Salter***, 121 A.3d 987, 994 (Pa. Super. 2015) (quotations and citations omitted).

Officer Lynch stopped Appellant's vehicle for violating Section 3111 of the Motor Vehicle Code, "Obedience to traffic-control devices," which provides, in pertinent part:

> **(a) General rule.--**Unless otherwise directed by a uniformed police officer or any appropriately attired person authorized to direct, control or regulate traffic, the driver of any vehicle shall obey the instructions of any applicable official traffic-control device placed or held in accordance with the provisions of this title, subject to the privileges granted the driver of an emergency vehicle in this title.

75 Pa.C.S.A. § 3111(a).

We conclude that Officer Lynch possessed the probable cause necessary to stop Appellant's vehicle. At the suppression hearing, Officer Lynch testified that when he initially encountered Appellant's vehicle, he noticed that it was accelerating rapidly in an area that was heavily residential. N.T., 12/8/16, at

- 8 -

6-7. As Officer Lynch pursued the vehicle, he attempted to determine Appellant's speed by pacing his vehicle. *Id.* Although he did not pace the vehicle for three-tenths of a mile, he did notice that in order to keep up with Appellant, he had to travel 63 miles per hour in a 35 mile per hour zone. *Id.* at 7. Officer Lynch explained that, consequently, he decided to stop Appellant's vehicle for failing to obey traffic control devices, in particular, the speed limit signs posted along road. *Id.* Officer Lynch, however, did not stop Appellant's vehicle merely for speeding, but rather, he testified that driving in that area significantly in excess of the speed limit is particularly dangerous because it is a heavily residential area with several driveways, intersections, and some businesses. *Id.* He explained:

> In that area, about five years prior, we had a speeding vehicle leave the roadway and four people were ejected and killed and a fifth person was seriously injured. And so the speed is a concern in this area. But that was part of the context for the stop.
>
> The other part was the fact that there are signs erected dictating to people what speed they must go. If they don't follow those lawfully posted signs, then that would be my interpretation of a violation of obedience to traffic control devices.

*Id.* at 30.

Therefore, the facts and circumstances were sufficient to warrant Officer Lynch's reasonable belief that Appellant was operating his vehicle in violation of Section 3111. *See Stultz*, 114 A.3d at 883. The record reveals that not only was Appellant travelling nearly 30 miles per hour in excess of the speed limit, but he was doing so in a heavily residential area containing several

driveways, intersections, and businesses. Accordingly, the trial court did not abuse its discretion in determining that Officer Lynch possessed the probable cause necessary to stop Appellant's vehicle for failing to obey traffic control devices.[3]

Appellant next argues that the trial court erred in determining that he consented to his blood draw. Appellant asserts that his lack of an objection to a blood draw did not amount to consent and that Officer Lynch never afforded him an opportunity to refuse the blood draw.

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." **Commonwealth v. McAdoo**, 46 A.3d 781, 784 (Pa. Super. 2012). The "administration of a blood test ... performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. **Commonwealth v. Kohl**, 615 A.2d 308, 315 (Pa. 1992). "A search conducted without a warrant is deemed to be unreasonable and therefore

---

[3] We note that Officer Lynch also had probable cause to stop Appellant's vehicle for violating Section 3301 of the Motor Vehicle Code, "Driving on right side of roadway." Officer Lynch specifically testified that he observed Appellant's vehicle cross "over the center line." N.T., 12/6/18, at 6. This Court has held that such vehicular movement establishes probable cause to conduct a vehicle stop. **See Commonwealth v. Enick**, 70 A.3d 843, 846 (Pa. Super. 2013) (finding a police officer has probable cause to conduct a vehicle stop for violating 75 Pa.C.S.A. § 3301 after observing the vehicle cross the double yellow line a single time).

constitutionally impermissible, unless an established exception applies." **Commonwealth v. Strickler**, 757 A.2d 884, 888 (Pa. 2000). "One such exception is consent, voluntarily given." **Id.** at 888-889.

In **Birchfield**, the United States Supreme Court addressed the constitutionality of warrantless blood draws. Although the Court concluded that warrantless blood draws are not permissible as searches incident to arrest, the Court determined that they are nonetheless permissible under the consent exception to the warrant requirement. **Birchfield**, 136 S. Ct. at 2185-2186. The Court explained that its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply with BAC tests[.]" **Id.** at 2185.

The Court further stated, however, that it is "another matter ... for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." **Id.** It reasoned that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." **Id.** Thus, the Court concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." **Id.** at 2186. As this Court has explained, "**Birchfield** makes plain that the police may not **threaten** enhanced punishment for refusing a blood test in order to obtain consent, 136 S. Ct. at 2186; whether that enhanced

punishment is (or can be) ultimately imposed is irrelevant to the question whether the consent was valid." ***Commonwealth v. Ennels***, 167 A.3d 716, 724 (Pa. Super. 2017) (emphasis in original).

Our Supreme Court has explained that we evaluate the voluntariness of consent objectively, based on the totality of the circumstances:

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Commonwealth v. Gillespie***, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., opinion announcing the judgment of the court) (citing ***Commonwealth v. Cleckley,*** 738 A.2d 427, 433 n.7 (1999)). Importantly, our Supreme Court has held that an arrestee need not be informed of the right to refuse a chemical test in order for the consent to be voluntary under Article I, Section 8 of the Pennsylvania Constitution. ***Cleckley***, 738 A.2d at 428.

Appellant is correct that certain factors weigh against a finding of voluntariness, as Officer Lynch did not advise Appellant of his right to refuse consent and he was under arrest at the time of the blood draw. N.T., 12/8/16/, at 18-19. There are, however, several other factors that support a finding of voluntariness. Officer Lynch testified that when he took Appellant to the hospital for the blood test, Appellant was completely cooperative and did not provide any indication that he wanted to refuse the test. ***Id.*** at 19.

Officer Lynch further testified that Appellant was not handcuffed during the blood test or physically restrained in any way. *Id.* at 26.

Moreover, there is no evidence of record that Appellant was under duress during the blood draw or that Officer Lynch used any coercive tactics to get Appellant to consent to the blood draw. The record reflects that Officer Lynch did not threaten Appellant with enhanced criminal penalties prior to the blood test. Instead, Officer Lynch plainly informed Appellant that he was placing him under arrest for suspicion of DUI and that he was taking him to the hospital for a blood test. *Id.* at 18, 26. Officer Lynch apprised Appellant of how long the test would take, informed him that he was not going to jail, and told him he would likely be released within an hour. *Id.* at 26.

Therefore, we conclude, based on the totality of the circumstances, that the record supports the trial court's determination that Appellant consented to the blood draw and that his consent was "the product of an essentially free and unconstrained choice." *Strickler*, 757 A.2d at 901. As this Court has stated, "Appellant consented to the blood test and it is patently illogical to suggest that [he] would have refused had he known that by doing so, he would have been subject to additional penalties. Appellant was not prejudiced in any way." *Commonwealth v. McCoy*, 895 A.2d 18, 27 (2006), *aff'd*, 975 A.2d 586 (Pa. 2009). Accordingly, the trial court did not err in denying Appellant's suppression motion.

Judgment of sentence affirmed.

Judge Panella joins the memorandum.

P.J.E. Ford Elliott files a dissenting Memorandum Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/29/2018