J-S25017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROEGESTER GRAYS | : | |
| | : | |
| Appellant | : | No. 29 MDA 2019 |

Appeal from the PCRA Order Entered December 20, 2018
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0000787-2013

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 31, 2019**

Roegester Grays (Appellant) appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

A prior panel of this Court detailed the facts and procedural history of this case as follows:

> On March 1, 2013, at approximately 5:00 p.m., Appellant, who was driving a Chevrolet Avalanche ("Avalanche") westbound on Route 328, collided head-on with a Chevrolet Suburban ("Suburban"), which was traveling eastbound on Route 328 and being driven by Ryan English.  As a result of the crash, Mr. English and his wife, Karen English, were killed instantly, and their thirteen-year-old son, C.M., and four-year-old son, L.E., were injured.  Their ten-year-old son, G.E., was not injured.
>
> Appellant was arrested and charged with numerous crimes.  On November 21, 2013, he filed a lengthy counseled, pre-trial motion seeking, *inter alia*, to suppress his blood alcohol content ("BAC") from blood that was drawn on March 1, 2013, at 9:20 p.m., after he was arrested by Pennsylvania State Police Trooper John J. Youngblood, to suppress the physical evidence seized by the

police from his vehicle, and to suppress pre-arrest statements Appellant made to Trooper Youngblood at the Arnot Ogden Medical Center ("Arnot Ogden") Emergency Room in New York.

Following a hearing held on January 7, 2014, by order and opinion filed on April 1, 2014, the trial court granted Appellant's motion to suppress Appellant's post-arrest BAC from the blood drawn at 9:30 p.m. upon request of Trooper Youngblood; however, the trial court denied Appellant's motion to suppress the evidence obtained from the search of his vehicle and the evidence gained by the police at Arnot Ogden prior to Appellant's arrest. Trial Court Order, filed 4/1/14.

On July 25, 2014, Appellant filed an additional pre-trial omnibus motion in which he sought, *inter alia*, to suppress and/or preclude the Commonwealth from introducing Appellant's medical records from Arnot Ogden, particularly Appellant's pre-arrest BAC from blood drawn at 5:30 p.m. on March 1, 2013, by order of Appellant's treating physician, Joseph Haluska, M.D. [(Dr. Haluska]), at the Arnot Ogden Emergency Room. Specifically, Appellant contended the medical records were obtained via an improperly issued and served subpoena, in violation of Appellant's doctor-patient privilege, and inadmissible as there was no "paper trail" establishing blood was actually drawn by order of Dr. Haluska. The trial court denied Appellant's motion.

\* \* \*

On November 16, 2015, the matter proceeded to a jury trial at which the parties stipulated that the death of Mr. and Mrs. English was caused by trauma incurred during the motor vehicle collision at issue. N.T., 11/16/15, at 32.

\* \* \*

At the conclusion of all testimony, the jury convicted Appellant of [two counts of homicide by vehicle while driving under the influence of alcohol ("homicide by vehicle–DUI"), one count of aggravated assault by vehicle while driving under the influence ("aggravated assault by vehicle–DUI"), two counts of homicide by vehicle, one count of aggravated assault by vehicle, two counts of driving under the influence-general impairment and high rate ("DUI"), and one count of possession of a controlled substance]. Appellant filed a post-verdict motion alleging the verdicts were not

supported by sufficient evidence and/or the verdicts were against the weight of the evidence. By order entered on January 6, 2016, the trial court denied Appellant's post-verdict motions, and on January 7, 2016, Appellant proceeded to a sentencing hearing, at the conclusion of which he was sentenced to an aggregate of 252 months plus 30 days in prison to 564 months in prison. Appellant was given 488 days of credit for time served, and he filed timely post-sentence motions, which were denied by operation of law on June 20, 2016. [A] timely counseled appeal followed.

***Commonwealth v. Grays***, 167 A.3d 793, 796-805 (Pa Super. 2017) (citations and footnotes omitted), *appeal denied*, 178 A.3d 106 (Pa. 2018).

On July 25, 2017, this Court affirmed Appellant's judgment of sentence. ***See id.*** at 796. On January 8, 2018, our Supreme Court denied Appellant's petition for allowance of appeal.

On January 24, 2018, Appellant filed a *pro se* PCRA petition. On March 5, 2018, following the appointment of counsel, Appellant filed an amended PCRA petition in which he raised numerous ineffective assistance of counsel claims against trial counsel. On September 28, 2018, the PCRA court held a hearing on Appellant's petition.[1] On December 20, 2018, the PCRA court denied Appellant's PCRA petition. This timely appeal followed.

On appeal, Appellant presents the following issues for review:

A. Trial [c]ounsel was ineffective for failing to request a written report from Commonwealth witness Elizabeth Martin prior to trial addressing the conversion factor from serum blood to whole blood and in failing to request a continuance during trial to address this evidence when the conversion factor and Appellant's blood alcohol level were key issues in Appellant's trial.

_____

[1] Trial counsel is deceased and was therefore unable to testify during Appellant's PCRA hearing.

- 3 -

B. Trial [c]ounsel was ineffective for failing to challenge or present any claim prior to or during trial that Appellant's pre-arrest blood draw was involuntary, performed without his consent and coerced when the Commonwealth failed to demonstrate Appellant voluntarily consented to the drawing and testing of his blood and trial counsel acknowledged his error by raising this issue in a Post-Sentence Motion that was deemed waived due to trial counsel's failure to properly preserve the issue.

C. Trial [c]ounsel was ineffective for failing to properly advise Appellant regarding his sentencing exposure and in doing so, improperly convincing Appellant to reject a plea offer that would have resulted in a significantly reduced sentence.

D. Trial [c]ounsel was ineffective in failing to discuss character witness testimony with Appellant and in failing to call character witnesses on Appellant's behalf when Appellant had available several effective character witnesses and the Commonwealth repeatedly argued Appellant was untruthful.

E. Trial [c]ounsel was ineffective for failing to object to an expert opinion offered on whether or not a medication administered to Appellant contained alcohol and could have affected Appellant's blood alcohol level when Appellant's blood alcohol level was a key element of the trial and the Commonwealth failed to qualify the witness to render said opinion or to request to admit the witness as an expert in this or any other field of expertise.

Appellant's Brief at 4.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

- 4 -

Each of the issues Appellant raises challenges trial counsel's effectiveness. In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). To demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. *Bomar*, 104 A.3d at 1188.

In his first issue, Appellant argues that trial counsel was ineffective for failing to request a written report before trial from the Commonwealth for expert witness Elizabeth Martin, who testified regarding the conversion factor used to determine Appellant's BAC from his blood serum. Appellant asserts that Appellant's BAC was an important part of the Commonwealth's burden of proof, and trial counsel's failure to obtain the report prevented trial counsel

from effectively cross-examining Ms. Martin about the methodologies used to

obtain Appellant's BAC.

    In rejecting this claim, the PCRA court explained:

> At trial, the System Director of Phlebotomy Services at Arnot Health Services, Elizabeth Martin, testified on behalf of the Commonwealth regarding the record of a medical blood draw made while [Appellant] was a patient at Arnot [Ogden], on the date of the accident. Ms. Martin provided testimony as to the serum alcohol blood levels and the conversion to a whole blood level required to determine a [person's] alcohol content for criminal offenses. Trial counsel objected claiming that the Commonwealth failed to provide a written report[,] as this was expert testimony.

> Pa.R.Crim.Proc. 573 provides that if the Commonwealth intends to call an expert who has not prepared a report, the court, upon motion, "*may*," order such a report and provide same to [the defendant]. Here, no such motion was made. [Appellant] claims as a result of that, trial counsel was ineffective.

> First, there is no assurance that a report would have been ordered had a motion been made. Rule 573 provides that the court "may" order such report. Therefore, this claim has no merit.

> Second, [Appellant] is misinterpreting trial counsel's objection by claiming trial counsel "acknowledged on the record that he needed a written report to effectively represent [Appellant]." [Amended PCRA Petition, 3/5/18, ¶ 34]. Rather, trial [counsel] stated his objection that the Commonwealth did not provide him with an expert report and that it was "a violation of his discovery, mandatory discovery requirements" under the rules. [N.T.], 11/18/1[5,] [at] 60. He then stated that "I'm just trying to play by the rules." [N.T.], 11/18/1[5] [at] 61. A review of the transcript suggests that trial counsel then effectively cross[-]examined the witness regarding the conversion factor. [N.T.], 11/18/1[5], at 64-71.

> Finally, [Appellant] has not met the burden of showing that he suffered prejudice. [Appellant] has not offered any legal theories or pointed to any type of cross-examination regarding studies, different conversion rates or evidence that demonstrates the

outcome of trial would have been different. [Appellant] has presented no evidence that the conversion rate was incorrect or based upon an unrecognized study. [Appellant] has not presented any "discrepancies" in the witness's opinion or testimony.

Therefore, this claim has no merit.

PCRA Court Opinion, 12/20/18, at 2-4.

Upon review, we conclude that the PCRA court did not abuse its discretion in dismissing this ineffective assistance of counsel claim. Rule 573 of the Pennsylvania Rules of Criminal Procedure provides, in pertinent part, as follows:

> (b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, **may** order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa.R.Crim.P. 573(B)(2)(b) (emphasis added). Thus, as the PCRA court correctly stated, there is no guarantee that had trial counsel filed a motion seeking the preparation of a report for Ms. Martin's testimony, the trial court would have granted it, as the decision to do so lies in the court's discretion. *See id.*

Additionally, we agree with the PCRA court's conclusion that Appellant failed to demonstrate that trial counsel's failure to request a report for Ms. Martin's testimony resulted in prejudice. As this Court has explained, to establish the need for a new trial in the context of Rule 573, a defendant must

demonstrate "that the introduction of the expert testimony caused him prejudice to the degree that it affected his trial strategy or likely affected the outcome of the proceedings." ***Commonwealth v. Roles***, 116 A.3d 122, 133 (Pa. Super. 2015).

Appellant asserts that "[b]ecause trial counsel did not request a written report, trial counsel was unable to research potential discrepancies in Ms. Martin's opinion, research other studies, determine whether the study cited by Ms. Martin was the recognized standard and ask for a review of Ms. Martin's opinion by providing her report to an expert recognized in the field of serum blood alcohol conversion." Appellant's Brief at 10-11. Although this may be true, Appellant introduced no evidence before the PCRA court, scientific or otherwise, to indicate that there was anything improper about the conversion protocol employed by the Phlebotomy Department at Arnot Health Services. Moreover, trial counsel, despite not having a report, was able to cross-examine Ms. Martin on several of these topics. ***See*** N.T., 11/18/16, 64-71. While a report may have aided trial counsel's cross-examination of Ms. Martin, there is no support for Appellant's claim that the outcome of trial would have been different. Accordingly, Appellant's first issue does not merit relief.

For his second issue, Appellant argues that trial counsel was ineffective for failing to seek suppression of his **pre-arrest** blood draw conducted by the medical staff at Arnot Ogden shortly after the accident; Appellant claims that

the blood draw was involuntary and taken without his consent.[2]  Appellant asserts that trial counsel should have sought suppression of the pre-arrest blood draw on the basis of the United States Supreme Court's decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016).

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures."  *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012).  The "administration of a blood test ... performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions.  *Commonwealth v. Kohl*, 615 A.2d 308, 315 (Pa. 1992).  "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies."  *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000).  "One such exception is consent, voluntarily given."  *Id.* at 888-889.

Our Supreme Court explained:

While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating

---

[2] As stated above, the trial court suppressed Appellant's **post-arrest** blood draw ordered by the Pennsylvania State Police later in the night of the accident.

- 9 -

evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Commonwealth v. Gillespie*, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., opinion announcing the judgment of the court) (citing *Commonwealth v. Cleckley,* 738 A.2d 427, 433 n.7 (1999)).

In *Birchfield*, the United States Supreme Court addressed the constitutionality of warrantless blood draws.  Although the Court concluded that warrantless blood draws are not permissible as searches incident to arrest, the Court determined that they are nonetheless permissible under the consent exception to the warrant requirement.  *Birchfield*, 136 S. Ct. at 2185-2186.  The Court explained that its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply with BAC tests[.]" *Id.* at 2185.

The Court further stated, however, that it is "another matter ... for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." *Id.*  It reasoned that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.*  Thus, the Court determined that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

Instantly, we conclude that trial counsel was not ineffective for failing to raise a *Birchfield* challenge in Appellant's suppression motion. Appellant filed his suppression motions on November 21, 2013 and July 25, 2014 and his trial took place in November 2015. The United States Supreme Court decided *Birchfield* on June 23, 2016, well after Appellant filed his suppression motions and his trial concluded. As our own Supreme Court has explained, "[t]he law is clear that counsel cannot be held ineffective for failing to anticipate a change in the law." *Commonwealth v. Cox*, 983 A.2d 666, 702 (Pa. 2009).

Moreover, we recognize that *Birchfield* only applies to blood draws ordered by law enforcement of persons under arrest at the time the blood draw occurs. *See Commonwealth v. Myers*, 164 A.3d 1162, 1172 (Pa. 2017) (explaining that Pennsylvania's implied consent laws provide "the statutory right of refusal to 'any person placed under arrest' for DUI"); *see also* 75 Pa.C.S.A. § 1547(b)(1). In *Myers*, our Supreme Court held that a warrantless blood draw of an unconscious individual who was under arrest at the time of the blood draw was unconstitutional. *Myers*, 164 A.3d at 1181-82. The Court emphasized that "the critical fact is not whether the motorist is conscious, but whether the motorist is under arrest." *Id.* at 1171 n.14. Here, Appellant concedes that he was not under arrest when medical staff conducted the blood draw. Thus, *Birchfield* is not applicable, and the PCRA court did not abuse its discretion in denying this ineffective assistance of counsel claim.

In his third issue, Appellant argues that trial counsel was ineffective for improperly advising him about the potential length of his sentence. Appellant asserts that trial counsel's allegedly improper advice caused him to reject a plea offer that he claims would have resulted in a far lesser sentence.

It is well established that:

a post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him or her to reject a guilty plea must demonstrate the following circumstance:

[B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015) (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

We conclude that the trial court did not abuse its discretion in the denying this ineffective assistance of counsel claim. At his PCRA hearing, Appellant testified about a letter sent by the Commonwealth to trial counsel that invited trial counsel "to offer to settle the case for a five year minimum." N.T., 9/28/18, at 33, Exhibit 2 (Letter, 3/5/15). Appellant claimed that trial counsel informed him that the Commonwealth did not have the evidence to convict him of several offenses, and that he would receive, at most, a 10-year sentence. *Id.* at 35. Appellant maintains this advice convinced him to go to trial. *Id.* at 35-36. Appellant stated that had he known he had the potential

- 12 -

to receive a minimum sentence of more than 20 years of incarceration, he would have "deeply considered taking [the] plea." *Id.*

The PCRA court found that Appellant's testimony was not credible, noting that Appellant "has consistently claimed his innocence" throughout his trial and continued to do so during PCRA proceedings. PCRA Court Opinion, 12/20/18, at 7. Indeed, Appellant admitted on cross-examination during his PCRA hearing that he believed during his trial that he had no alcohol in his system at the time of the accident and that he was not at fault for the accident. N.T., 9/28/18, at 37-38. It is well settled that "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this Court." *Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa. Super. 2014). Based on Appellant's own assertions of innocence, both at trial and before the PCRA court, the record clearly supports the PCRA court's determination that Appellant would not have pled guilty, as doing so would have required him to forgo his assertions of innocence. Consequently, Appellant has failed to demonstrate that there was a reasonable probability that he would have accepted a plea offer. *See Steckley*, 128 A.3d at 832. Appellant's third ineffective assistance of counsel claim is meritless.

For his fourth issue, Appellant argues that trial counsel was ineffective for failing to call character witnesses on his behalf after the Commonwealth attacked his credibility at trial by stating during closing arguments that the testimony of its witnesses was more believable than the Appellant's testimony

regarding what transpired during and immediately following the accident. We have explained:

> It has long been the law in Pennsylvania that a defendant in a criminal case may introduce evidence of his reputation for truthfulness in but two circumstances. First, the accused may introduce evidence of his truthful character if the trait of truthfulness is relevant to the crime with which he has been charged.
>
> Second, the accused may introduce evidence of his truthful character if his reputation for truthfulness has first been attacked by the prosecution.

**Commonwealth v. Minich**, 4 A.3d 1063, 1071 (Pa. Super. 2010) (quotations and citations omitted).

There is no dispute that truthfulness was not relevant to the crimes at issue. Thus, Appellant could only introduce evidence of his truthful character if the Commonwealth attacked his reputation for truthfulness at trial. Although Appellant points to several instances during closing when the Commonwealth argued that the jury should believe the testimony of its witnesses over the testimony of Appellant, he is unable to identify a single instance where the Commonwealth attacked his **reputation** for truthfulness. "[W]here the prosecution has merely introduced evidence denying or contradicting the facts to which the defendant testified, but has not assailed the defendant's community reputation for truthfulness generally, evidence of the defendant's alleged reputation for truthfulness is not admissible." **Commonwealth v. Kennedy**, 151 A.3d 1117, 1128 (Pa. Super. 2016) (quotations and citation omitted). Thus, because evidence of Appellant's

reputation for truthfulness was not admissible at trial, trial counsel was not ineffective for failing to call character witnesses on Appellant's behalf, and the trial court did not abuse its discretion in denying this ineffective assistance of counsel claim.

In his final issue, Appellant argues that trial counsel was ineffective for failing to object to Dr. Haluska's testimony. Appellant asserts that Dr. Haluska improperly gave expert testimony indicating that there was no alcohol in Dilantin — a narcotic and pain reliever that Dr. Haluska administered to Appellant while treating Appellant in the emergency room of Arnot Ogden — and that Dilantin and other medications Appellant received in the emergency room would not have affected his BAC. Appellant contends that trial counsel should have objected to this testimony because the Commonwealth never qualified Dr. Haluska as an expert in the field of pharmaceuticals.

Again, we conclude that the PCRA court did not abuse its discretion in denying this ineffective assistance of counsel claim. Assuming, *arguendo*, that trial counsel should have objected to Dr. Haluska's testimony relating to Dilantin and other medications Appellant received in the emergency room, Appellant has failed to establish that he was prejudiced by the lack of objection. Appellant has presented no evidence that Dilantin contained alcohol and that it would have affected Appellant's BAC. Appellant also offers no argument explaining how the Dilantin could have affected his pre-arrest BAC when Dr. Haluska explicitly testified that he ordered Appellant's BAC

**prior** to administering any medications to Appellant. **See** N.T., 11/18/15, at 36. Thus, trial counsel's failure to object, even if improper, does not provide a sufficient basis to conclude that there was a reasonable probability that the outcome at trial would have been different had trial counsel objected to Dr. Haluska's testimony. **See King**, 57 A.3d at 613. Appellant's final ineffective assistance of counsel claim does not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2019